(No. 40327.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* FREEMAN R. WILLIAMS, Appellant.

*Opinion filed September 29, 1967.*

JOHN UNGER, Public Defender, of Danville, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN P. O'ROURKE, State's Attorney, of Danville, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Freeman R. Williams, was convicted by a jury in the circuit court of Vermilion County for the double murder of his wife, Vivian Williams, and his sister, Maxine Schultz. He was sentenced to the penitentiary on each conviction for a term of 30 to 50 years, to be served concurrently.

He appeals, alleging violations of his constitutional rights to due process, to freedom from self-incrimination, and to trial by jury. More specifically, he charges that indicting him after his request for a competency hearing violated due process, that permitting the psychiatrists who examined him at his pretrial competency hearing to testify against him at trial violated his right against self-incrimination, and that failure to permit the jury to determine the voluntariness of his confession violated his right to trial by jury.

Additionally, defendant alleges error in the court's treatment of his insanity defense, to-wit: its ruling that his expert witness's answer to a hypothetical question be stricken, its refusal to permit a lay witness to give an opinion as to

defendant's sanity, its restriction of his cross-examination of an expert witness, and its refusal to submit certain offered instructions to the jury. Defendant further contends that the trial court erred in consolidating the two murder indictments, in admitting his confession into evidence, in denying a motion to withdraw a juror and declare a mistrial, and in improperly instructing the jury.

The facts surrounding the murders were uncontroverted. About 5:30 P.M., on June 1, 1966, defendant's wife, Vivian, and his sister, Maxine Schultz, arrived at defendant's house after having visited Charles Varner at his place of employment. Defendant and the two women then went to dine at a local inn where defendant consumed two or three beers before dinner. The three returned home after eating and later that evening, between 12:00 midnight and 1:00 A.M., Varner came over with a six-pack of beer. Defendant, his sister, and Varner sat in the kitchen each drinking a beer, and were joined a few minutes later by defendant's wife whom he had called from the bedroom. For a short time Varner conversed with Maxine and then left because "[he] thought [he] should leave." While driving his car out of the driveway, Varner happened to look in the window and saw defendant standing in the kitchen with what appeared to be a gun in his hand. He then drove to a pay telephone, called defendant's house and asked for Maxine. Defendant, who answered the phone, said he had just shot both of the women. Shortly thereafter, a deputy sheriff of Vermilion County received a call at the county jail in Danville from defendant who told him "I've just killed two women" and upon request gave his name and address. Police officers, called by radio, and the deputy immediately drove to defendant's house and, looking through a window, observed defendant talking on the phone and holding a revolver in his hand. In the meantime, defendant had called the jail again and the jailer who answered kept him on the call until the police had arrived at the house and then told

him to lay down the gun and walk outside. Defendant did so, was arrested and taken to the county jail.

Defendant was informed of his rights to remain silent and to have an attorney before he talked to the police. He then made an oral confession of the murders that was thereafter reduced to writing and signed by him. The confession recited that defendant had read it, that it was voluntary and that he knew and understood his rights. In the confession he stated that he was irritated about Varner coming over to his house because he suspected him of being his wife's "boy friend". Although he did not display his anger in front of Varner, he said he argued with Maxine after Varner left, got his gun from under the bed, loaded it and shot her when she cursed him twice and dared him to pull the trigger. He then "picked off" his wife.

On June 14, 1966, a preliminary hearing was held before a magistrate resulting in defendant being bound over to the grand jury which subsequently indicted him on July 11, 1966, for the murder of Vivian Williams and Maxine Schultz in separate indictments. Prior to indictment defendant filed a petition for a competency hearing with the magistrate, who then appointed two psychiatrists to examine him. No further action was taken thereon until after indictment when the trial court on its own motion ordered a competency hearing, appointing the same psychiatrists. Defendant was examined by them, and at a hearing held on July 28, 1966, was found competent to stand trial.

Prior to trial defendant moved to dismiss the indictments on the bases that they were illegally obtained during the pendency of his competency hearing, and that the charges should have been set forth in a single indictment. Following the denial of these motions, he moved to suppress his confession on the grounds that at the time of its rendition he did not "understand" his constitutional rights. A hearing was held thereon, wherein two police officers testified that they interrogated defendant on the morning of June 2,

1966, after informing him several times of his right to remain silent and right to assistance of counsel. The officers stated that in their opinion, based on observation, the defendant knew and understood his rights and that he read the statement aloud before signing it. They further stated that defendant did not appear intoxicated and displayed no peculiar or unusual conduct at the time. The court then ruled that the written confession was admissible.

The indictments were consolidated and defendant's trial commenced September 6, 1966. Defendant sought to establish the affirmative defense of temporary insanity and his case consisted of his own testimony, that of his daughter, a fellow employee, two neighbors and a psychiatrist called as an expert witness. The State's case consisted of defendant's confession and the testimony of Varner, the arresting and interrogating police officers, and the two psychiatrists who examined defendant for the competency hearing. The jury returned a verdict of guilty on both indictments, and judgment was entered thereon.

With respect to the constitutional questions raised by the defendant, we first consider whether the fact that defendant was indicted prior to the disposition of his competency hearing was contrary to the due process guarantees of the Federal and State constitutions and to section 104—2 of Code of Criminal Procedure, which in relevant part provides:

"(a) If before a trial * * * the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and * * * shall conduct a hearing to determine the defendant's competency.

* * *

"(e) If the defendant is found to be competent the proceedings which had been suspended shall be resumed." Ill. Rev. Stat. 1965, chap. 38, par. 104—2.

The section requires suspension of trial proceedings pending disposition of the competency hearing only after

the defendant is required to answer to a criminal charge. Therefore, defendant was not denied due process in this regard.

Defendant next maintains that permitting the two psychiatrists who examined him in connection with his competency hearing to testify at the trial violated his right against self-incrimination as guaranteed by section 10 of article II of the Illinois constitution, and as implemented by statute, specifically subsection (d) of section 104—2, of the Code of Criminal Procedure which provides:

"(d) The court may appoint qualified experts * * * to examine the defendant with regard to his competency and to testify at the hearing. * * * *No statement* made by the accused in the course of any examination into his competency * * * shall be admitted in evidence against the accused on the issue of *guilt* in any criminal proceeding." (Emphasis ours.) Ill. Rev. Stat. 1965, chap. 38, par. 104—2.

While this is the first time we have been called upon to construe this provision, we have previously considered the constitutional aspects of this issue in *People* v. *Krauser,* 315 Ill. 485, wherein we held, in an identical situation, that the examining psychiatrist could give opinion testimony at the trial without violating the accused's privilege against self-incrimination for there was no testimonial compulsion involved. (See also *People* v. *Greer,* 28 Ill.2d 107, 112.) Consistent with this holding and its underlying rationale (see 8 Wigmore, Evidence, § 2263, p. 378), we interpret the prohibition expressed in the above quoted provision to be limited to "statements" made by the accused while being examined which are offered for their truth as opposed to statements offered not for their truth but to show defendant's mental condition. Our review of the record discloses that the trial court did restrict the examining psychiatrists within this statutory limitation.

The final constitutional issue raised by defendant con-

cerns the trial court's refusal to allow the jury to pass on the facts underlying the "voluntariness" of his confession prior to its admission which he contends constitutes a denial of his rights to trial by jury and due process of law. Consistent with this position he contends that section 114—11(f) of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 114—11(f),) providing that the admissibility of a confession "shall not be submitted to the jury", is unconstitutional. We have recently considered and rejected this argument in *People* v. *Jolliff*, 31 Ill.2d 462, wherein we reaffirmed the rule that the trial judge is the sole arbiter of the voluntary nature and the admissibility of a confession. In *Jolliff*, we stated at p. 466: "The object of the rule requiring a preliminary hearing is to exclude from the jury's consideration any evidence of a defendant's confession until the court has made an independent determination that the confession is voluntary. A hearing after the evidence has been submitted to the jury does not accomplish this purpose." Clearly, this requirement is to the defendant's advantage and not violative of any constitutional precepts. *Jackson* v. *Denno*, 378 U.S. 368, 390, 12 L. Ed. 2d 908, 923.

·With regard to the trial court's treatment of his insanity defense, defendant first contends that the court erroneously ordered the answer of his expert witness, in response to a hypothetical question, stricken from the record. The record indicates that the expert witness had initially testified that from his examination of defendant it was his opinion he had a personality disorder. Defense counsel then inquired of the witness, in a hypothetical question containing the above opinion and the further fact that defendant was intoxicated on the night of the killings, whether in his opinion the defendant, "as a result of a mental defect, was lacking substantial capacity to conform his conduct to the requirements of law." The State's objection to the question was overruled "at this time" and the witness stated that he

felt defendant had such a defect as would prevent him from conforming his conduct to legal norms. On cross-examination the witness stated that he based his opinion on the fact that defendant had a personality disorder and, on the night in question, was suffering from "alcohol poisoning" since cumulatively he regarded these conditions as constituting a mental defect rendering defendant legally insane at the time of the commission of the crime. At this point defense counsel interjected that "alcohol poisoning" was equatable to "intoxication" whereupon the State again objected to the witness's conclusion that a mental defect existed, on the grounds that there was no evidence before the court that defendant was intoxicated on the night in question. The court sustained the objection and ordered the offending testimony stricken and instructed the jury to disregard it. With this action we are in accord. It is clear that a personality disorder alone cannot constitute a mental defect within the statute. (Ill. Rev. Stat. 1965, chap. 38, par. 6—2; *People v. Miller,* 33 Ill.2d 439.) Therefore, the recitation in the hypothetical question of the fact of intoxication was highly material and prejudicial since the only evidence adduced on the subject was the testimony of Varner and the police officers to the effect that defendant was not, in fact, intoxicated. We therefore find no error in this regard.

Defendant also contends that the court erred by refusing to permit a lay witness to give an opinion as to his sanity, and by unreasonably restricting his cross-examination of the State's expert witnesses. With respect to the former contention, the general rule is that nonexpert witnesses may give their opinion as to an individual's sanity based on their personal observations. (*People v. Patlak,* 363 Ill. 40.) However, the record shows that the trial court sustained an objection to the lay witness's testimony only as to the form of the questions since it was not in compliance with the applicable statute. (Ill. Rev. Stat. 1965, chap. 38, par. 6—2.) In this ruling we find no impropriety. Moreover,

we note that even though defendant's offer of proof indicated that the witness's opinion would be that defendant was insane at the time of the commission of the crime, such opinion would have been of little probative value since the observations cited by the witness as the basis of her opinion tended to establish defendant's sanity. From a further examination of the record, we likewise find no error in the court's restriction of defendant's cross-examination of the State's expert witnesses. While latitude should be allowed on cross-examination of an expert witness to investigate the foundation of his opinions which are based upon hypothetical questions, the scope of such examination is still within the discretion of the trial judge and his decision will not be overruled unless it is clear that the cause of the restricted party is thereby prejudiced. (*Muscarello* v. *Peterson,* 20 Ill.2d 548.) We find that the trial judge used reasonable discretion in limiting the cross-examination, and defendant was given ample opportunity to explore the basis of the expert witnesses' opinions.

Defendant finally contends, in regard to his insanity defense, that the court erred in refusing certain instructions tendered by him on this subject. From a careful reading of the record and all the instructions given, we believe that the jury was properly instructed on this issue, and that defendant's tendered instructions were properly rejected, either because they incorrectly stated the law or were repetitious. Furthermore, we note that there was overwhelming evidence of the defendant's sanity to satisfy the jury beyond a reasonable doubt on this question.

Defendant's next charge that the court erred in consolidating the two murder indictments for trial is wholly untenable (see Ill. Rev. Stat. 1965, chap. 38, par. 114—7) and we therefore turn to a consideration of the other allegations of error raised by him. With respect to his contention that his confession was involuntary and should not have been admitted into evidence, since he was insane at the time he made

it and did not "know and understand" his rights, the record discloses that a preliminary hearing was conducted on this question pursuant to defendant's verified motion to suppress. This motion contained the naked allegation that his statements were made without "knowledge and understanding" of his constitutional rights and did not allege that his failure to so understand his rights was due to insanity or any other specific cause. At the hearing the only evidence adduced was the controverting testimony of the interrogating police officers who testified that they informed the defendant of his constitutional rights several times before interrogation and that in their opinion, based on observation, defendant understood his rights. The question of the voluntariness of a confession is for the trial judge to determine, and on review his determination will not be disturbed unless it is against the manifest weight of the evidence. (*People* v. *Spencer*, 27 Ill.2d 320.) There is substantial evidence, consisting of the above unrebutted testimony, to refute defendant's unsupported allegation and to admit his confession.

From this affirmance of the trial court's finding of voluntariness, it follows that certain instructions tendered by defendant concerning his confession were properly rejected. It further follows that the prosecutor's remark in closing argument that the confession was "obviously voluntary" was not error since it is well settled that statements of the prosecution based on evidence and legitimate inference to be drawn therefrom do not exceed the bounds of proper argument. *People* v. *Woods*, 26 Ill.2d 557.

Defendant also charges that the court erred in denying his motion to withdraw a juror and declare a mistrial after it was discovered that the jurors were permitted to communicate by phone with their families, and that in one instance a juror was subjected to family pressure for serving on the jury. The record indicates that all the jurors' phone calls were monitored by a bailiff who subsequently reported that none of the jurors, including the juror whose

family apparently disapproved of her serving, discussed the trial with anyone on the outside. Moreover, the judge's offer to substitute an alternate juror for the one subjected to pressure, was declined by the defendant and, in addition, the jury was instructed against deciding the issues on the basis of prejudice. Defendant cites several cases wherein a defendant sought to set aside a jury verdict because the jurors communicated with outsiders. While these cases are factually distinct from the one at bar, which involves a motion for mistrial, their logic, as exemplified by the following statement in *People* v. *Berry*, 18 Ill.2d 453, 459, is equally applicable here: "In order to justify setting aside the verdict of a jury because of an unauthorized communication with them, it is necessary to show the defendant was prejudiced." In our opinion, absent such a showing, there is no obligation on the court to declare a mistrial. Since we find no prejudice, the court's denial of defendant's motion for mistrial was proper.

Defendant finally argues that the trial court should have given his tendered instructions as to the lesser included offenses, *i.e.*, voluntary manslaughter. However, from an examination of the entire record, we find no evidence upon which to base the giving of such instructions and therefore the court's refusal to submit them was proper. See *People* v. *White*, 311 Ill. 356.

For the reasons given, the judgment of the circuit court of Vermilion County is affirmed.

*Judgment affirmed.*