STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. DANIEL OBSTEIN, DEFENDANT-APPELLANT.

Decided October 21, 1968.

517

518

Mr. *David Samson* argued the cause for defendant-appellant (*Mr. David Samson* on the brief; *Messrs. Cummis, Kent & Radin,* attorneys).

Mr. *Guy W. Calissi,* Prosecutor of Bergen County, argued the cause for plaintiff-respondent.

The opinion of the court was delivered by

FRANCIS, J. On Friday, July 12, 1968, defendant Daniel Obstein was arrested and charged with the murder of Robert Yakubic on May 28, 1968 in Lyndhurst, N. J. He obtained counsel, was arraigned in the appropriate court, and a preliminary hearing was scheduled for Wednesday, July 17. *R. R.* 3:2-3. Defense counsel then applied for bail and the county court conducted a hearing thereon, *in camera*, on Monday, July 15. At the hearing, in addition to opposing bail, the prosecutor sought an order requiring defendant to submit to a psychiatric examination. In support of his opposition to bail the prosecutor submitted to the court an affidavit of a witness setting forth vital, relevant factual allegations concerning the nature of the homicide and defendant's participation in it. Relying on the facts so alleged, be contended defendant was not entitled to bail. Defendant offered no evidence in support of the bail application. In addition, he objected to the granting of the State's request for a psychiatric examination. After argument, the trial court denied bail and also ruled that defendant should submit to examination by the State's psychiatrists. The order for examination, dated July 15, authorized the doctors to examine "by conversation" with Obstein. On July 16, the day before the scheduled preliminary hearing, the Grand Jury indicted Obstein for murder. The indictment was in the usual short form. *R. R.* 3:4-3(*b*).

Defendant moved for leave to appeal from both rulings, and in view of the nature of the case, we set the matter down for oral argument as if the motion had been granted.

I

The Bail Application

■■ This Court had occasion a few years ago to deal with the issue of the right of a person under indictment for murder to be released on bail pending trial. *State v. Konigsberg,* 33 *N. J.* 367 (1960). There we said the constitutional

authorization to deny bail in murder cases where the proof is evident or the presumption great is satisfied, and that bail should be denied when upon analysis, the circumstances shown on the application disclose a fair likelihood that the defendant is in danger of a first degree murder verdict. 33 *N. J.*, at *pp.* 374-377; *N. J. Const.* 1947, *Art.* I, *par.* 11; Note, 7 *Vill. L. Rev.* 438 (1962). The requisite danger exists when the trial court concludes that the circumstances, if believed by a jury, could reasonably support a finding of that degree of murder. *Commonwealth ex rel. Alberti v. Boyle,* 412 *Pa.* 398, 195 *A. 2d* 97 (*Sup. Ct.* 1963). Our reference to first degree murder as distinguished from the death penalty is deliberate. The rule does not require a specific holding that the danger is of the death penalty. No such forecast is required of the trial judge, primarily because decision on that penalty is ordinarily for the jury upon and after a consideration of all the evidence introduced at the formal trial. *N. J. S.* 2A :113–4.

 While we said in *Konigsberg* that the burden of showing a fair likelihood that the defendant is in danger of a first degree murder verdict rests upon the State, we repeat a caution expressed in the opinion. On a bail hearing, guilt or innocence of the accused is not the issue. There can be no evaluation of the evidence with that result in mind. Direct conflicts between inculpatory or exculpatory facts cannot be resolved. Problems of credibility of witnesses, except, perhaps, in extraordinary circumstances, should not be passed upon. Such matters must await jury determination at the trial. 33 *N. J.*, at *p.* 377.

 The nature of the bail hearing seems to require some elaboration beyond that set down in *Konigsberg*. Conduct of the proceedings *in camera* in the absence of objection by the accused is approved. 'Care must be taken to safeguard him against possible prejudice at his later plenary trial through public revelation or reporting in the press or other media of the obviously incomplete but necessarily incriminating evidence. Naturally a stenographic record will be made

and preserved for later inspection by authorized persons at appropriate times.

The prosecutor may present the proof in affidavit form on which he bases his opposition to the release of the accused on bail. But *ex parte* affidavits cannot be used over the defendant's objection. *Commonwealth ex rel. Alberti v. Boyle, supra; Young v. Russell,* 332 *S. W. 2d* 629 (*Ky. Ct. App.* 1960). Consultation between counsel should settle the problem before the hearing. If agreement is reached to submit affidavits, defendant is entitled to copies sufficiently in advance to enable him to prepare counter-proofs, either by way of affidavits or live witnesses. If defendant declines to proceed by affidavits, the prosecutor must produce the witnesses on whom he relies to meet the test for denial of bail. The same may be said of the testimony adduced before the Grand Jury, if the prosecutor wishes to rely on it at the hearing. If defendant objects because he had no opportunity for cross-examination, the transcript will not suffice. It should be added that the trial judge in his discretion may disregard the consent of counsel and may refuse to proceed in any of these more summary fashions. In this event, of course, the necessary witnesses must be brought in and the normal hearing procedure followed.

The bail hearing before the trial court is not a unilateral one. That is, the prosecutor cannot limit the testimony to his direct examination of the State's witnesses. The defendant has the right of cross-examination. In this connection it must be remembered that the proceeding is not a wide-ranging one for discovery, nor for exploration or determination of guilt or innocence. The prosecutor, however, cannot prevent the accused from producing witnesses to introduce facts pertinent to the inquiry. But the narrow and focal issue must be kept in mind by the trial court and the hearing tailored to that issue, *i. e.,* whether the facts adduced by the State, notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a verdict of first degree

murder. See, *State v. Konigsberg, supra,* 33 *N. J.,* at *pp.* 377–379; *Commonwealth ex rel. Alberti v. Boyle, supra; Commonwealth v. Stahl,* 237 *Ky.* 388, 35 *S. W.* 2d 563 (*Ct. App.* 1931); *Ex parte Ray,* 86 *Tex. Cr. R.* 582, 218 *S. W.* 504 (*Ct. Cr. App.* 1920); Annotation, 89 *A. L. R.* 2d 355 (1963).

█ As previously noted, at the bail hearing in this case the prosecutor handed to the trial court the affidavit of a principal witness against defendant. At first, no copy was given to defendant nor was his counsel allowed to see it. Obviously this course was improper. How could a defendant be prepared to argue that the evidence against him was not evident nor the presumption great if he was not permitted to know what facts were set forth in the affidavit? Defendant did object to consideration of this *ex parte* affidavit, and he requested that the witness be produced for cross-examination. The court declined to order production of the witness. Some further argument resulted in delivery of a copy of the affidavit to defense counsel. After reading it, defendant renewed his request for production of the affiant for cross-examination, but the court said that since guilt or innocence was not the issue, the inquiry should be limited to a decision whether the facts as set out in the affidavit were sufficient to indicate a fair likelihood that defendant was in danger of a jury verdict of first degree murder. As we have indicated above, the rule of *Konigsberg* was not intended to be so constricted.

Obviously no rule of precise mathematical dimensions can be devised to govern *all* applications for bail. Each case must stand on its own facts, as presented by the State and by the defense, not for the purpose of obtaining a decision on the ultimate issue of guilt or innocence, but simply to enable the trial court to apply the *Konigsberg* test. That test administered by trial courts with restraint commensurate with its purpose will prevent excursions beyond its boundaries. From a practical standpoint it is unlikely that the State will offer more than a highlight of its inculpatory case

against the defendant, or that the defense, except in rare instances, will expose much of its own case. For example, in this instance defense counsel was informed after examining the State's affidavit that he could file counter-affidavits if he wished. He did not take advantage of the opportunity. In addition, although counsel indicated a desire to call the defendant as a witness and was granted this permission, he finally decided not to do so. It seems unlikely that bail applications in murder cases will impose an undue burden upon trial judges or prosecutors. But the time necessarily diverted to that end must be accepted as an incident of an accused's constitutional right to bail in such cases unless the proof against him is evident or the presumption great. *State v. Konigsberg, supra,* 33 *N. J.,* at *p.* 378.

There can be no doubt that the facts set forth in the affidavit submitted to the trial court are highly incriminating. Nevertheless, since the affidavit was *ex parte,* it did not suffice as testimony at the hearing when defendant objected and requested the production of the affiant and the right to cross-examine her. In our judgment it was error to refuse the request. For that reason the order denying bail is reversed and the matter is remanded to the trial court to permit the direct and cross-examination of the witness. On the renewed hearing either the State or defense may produce any other witnesses whose testimony is relevant having in mind the limited scope of the inquiry.

## II

### The Order for Psychiatric Examination

When the prosecutor sought an order requiring the defendant to submit to psychiatric examination, he had neither notice nor intimation that the defendant intended to plead insanity. See, *R. R.* 3:5–9*A.* Furthermore, he had not been given any indication that the accused would offer proof of a mental condition or impairment short of insanity which would be relevant on the existence of premeditation or de-

liberation at the time of the homicide. *State v. Vigliano,* 43 *N. J.* 44 (1964); *State v. Di Paolo,* 34 *N. J.* 279 (1961); *Ingles v. People,* 92 *Colo.* 518, 22 *P. 2d* 1109, 1113 (*Sup. Ct.* 1933). Nor had defendant suggested that evidence would be offered at the trial for jury consideration on the issue of the death penalty or life imprisonment in the event of a finding at trial of first degree murder. *State v. Mount,* 30 *N. J.* 195, *pp.* 215-220 (1959). In fact, it appeared that defendant had had no psychiatric examination, and had no present intention of interposing a claim of insanity at the time of the homicide, or of mental weakness of any character. At oral argument on this application for leave to appeal, defense counsel advised us that since the trial court's grant of permission to the prosecutor, defendant had been examined by a psychiatrist of his own selection. But the examination had produced no change in his position. He still had no present intention of offering psychiatric evidence on any subject at the trial. He claims, therefore, that since he has not injected insanity or any other allegation of mental weakness into the case for any purpose, a psychiatric examination by the State is unnecessary and irrelevant. There is no doubt that under the broad terms of the order the State's doctor is authorized to examine in order to form an opinion as to whether defendant was insane at the time of commission of the alleged murder, or suffering from any mental condition which might affect the degree of guilt or the possible death or life imprisonment punishment. Moreover, it is apparent from the trial court's discussion with counsel of our opinion in *State v. Whitlow,* 45 *N. J.* 3 (1965) that the judge's intention was to require the defendant to discuss the circumstances of the fatal incident with the psychiatrist, if the latter felt he could not form an opinion on defendant's mental condition unless such discussion were had. Since defendant has offered no psychiatric issue in the case, however, we agree with his contention that the order compelling him to submit to examination, including discussion of the alleged criminal event if the examiner believes such questioning is necessary,

violates his Fifth Amendment protection against self-incrimination. Therefore, the order must be and is hereby vacated. Although this action disposes of the matter, some further discussion of the legal problem may be helpful for future guidance.

We held in *State v. Whitlow, supra,* that where the defense of insanity is interposed and the State's psychiatrist finds discussion with defendant of the criminal event necessary to the formulation of an opinion on his mental capacity at the time of the homicide, defendant must cooperate fully in that regard (unless, of course, he is unable to do so because of a mental condition). His statements about the crime are admissible at the trial only on the issue of insanity, not on the issue of guilt. Therefore, they do not violate his Fifth Amendment rights. And we said that when such testimony is offered, the jury must be instructed about its limited probative force immediately and again in the court's charge, and that it cannot and must not be considered by them on the subject of guilt. *State v. Whitlow,* 45 *N. J.,* at *pp.* 16–21.[1] In addition to the supporting authorities cited in

---

[1] We took note in *Whitlow* (45 *N. J.,* at 22) of the doubt expressed by some persons that a jury of laymen can fully realize the significance of the trial judge's limiting instruction and apply it in a meaningful way. But, as we pointed out, the realities of the problem of dealing in a fair way to both parties when insanity is pleaded require this course. *Id.* at 17–22. And we must assume that jurors can and do obey the court's restrictive admonition. Moreover, under our present practice, the State relies in the first instance on the presumption of sanity and proves its guilt case first at the trial. Then defendant goes forward with his proof of insanity, which ordinarily exposes his discussion with his own psychiatrists about the circumstances of the criminal event. After the defense has fully developed its insanity case, there is little room for objection to the admission of testimony from the State's doctors about their discussion of the crime with defendant. *Id.* at 23; and see *State v. Swinburne,* 324 *S. W. 2d* 746, 751 (*Mo. Sup. Ct.* 1959).

In order to meet the misgivings about the ability of the jurors to respect the admission of the statements of the accused to the psychiatrists about the criminal event, some jurisdictions have adopted a split trial procedure and try the issue of insanity separate from that of guilt. See *State ex rel. La Follette v. Raskin,*

*Whitlow,* the following cases reflect the same viewpoint. *United States v. Albright,* 388 *F. 2d* 719 *(4th Cir.* 1968) ; *Pope v. United States,* 372 *F. 2d* 710 *(8th Cir.* 1967) ; *State v. Huson,* 440 *P. 2d* 192 *(Wash. Sup. Ct.* 1968) ; *People v. Whitmore,* 251 *Cal. App. 2d* 359, 59 *Cal. Rptr.* 411, 416 *(Ct. of App.* 1967) ; *People v. Williams,* 38 *Ill. 2d* 115, 230 *N. E. 2d* 224 *(Sup. Ct.* 1967) ; *State v. Swinburne, supra; People v. Krauser,* 315 *Ill.* 485, 146 *N. E.* 593 *(Sup. Ct.* 1925).

If a defendant stands mute at the examination or cooperates except for a refusal to discuss the alleged criminal event, at the trial his own psychiatrists will not be permitted over the State's objection to testify to the history of the event given to them. See *State v. Whitlow,* 45 *N. J.,* a *pp.* 25, 26. Further, if, as is generally the case, defendant's psychiatrists required the history in order to form an opinion as to insanity, they would be precluded from testifying to that opinion.

An alternative solution may be considered when a noncooperating defendant produces his own psychiatrists who have had his full assistance in their efforts to reach a diagnosis of sanity or insanity. Before sustaining the prosecutor's objection to their testimony, the court in its discretion, may declare a recess and give defendant an opportunity to submit to a full examination by the State's doctors, including discussion of the criminal event with them if they regard such discussion as necessary. If defendant still refuses to discuss the homicide with them, his doctors must be barred from testifying to their discussion of the subject with him or to their opinion that defendant was insane when the killing occurred, if that part of the history they obtained from him played a material role in the formulation of their opinion.

---

34 *Wis. 2d* 607, 150 *N. W. 2d* 318 (1967) ; *Calif. Penal Code* §§ 190, 190.1 (1957) ; 19 *Case W. Res. L. Rev.* 382 (1968) ; 18 *U. Me. L. Rev.* 96 (1966) ; 52 *Calif. L. Rev.* 386 (1964).

One further refinement of the problem must be mentioned. Suppose defendant's psychiatrists testify that ordinary questioning plus a physical examination were sufficient and that they did not need his account of the alleged criminal event in order to reach their opinion that he was insane when the victim was killed. In this rase situation the defense psychiatrists should be allowed to testify. But if the State psychiatrists are of the view that an opinion on insanity cannot be formed in the absence of unrestricted discussion with defendant, they should be allowed to testify that defendant's refusal to answer questions about the nature of his participatiton in the alleged crime prevented them from performing their function. *State v. Hudson, supra; Burgunder v. State,* 55 *Ariz.* 411, 103 *P. 2d* 256, 263 (*Sup. Ct.* 1940) ; *People v. French,* 12 *Cal. 2d* 720, 87 *P. 2d* 1014 (*Sup. Ct.* 1939). We indicated in *Whitlow* that the opinions of the United States Supreme Court in *Griffin v. State of California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed. 2d* 106 (1965) ; *Malloy v. Hogan,* 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1964) may be thought to have cast some doubt on the admissibility of a defendant's refusal to answer such questions. But in view of the rule set forth herein limiting the probative force of the doctor's testimony to the issue of mental competency, such facts are some evidence of defendant's mental condition and should be received. *State v. Huson, supra,* 440 *P. 2d,* at *pp.* 197, 198.

The two other aspects of the problem relating to partial mental disability and to punishment mentioned above require discussion. If an accused intends to offer psychiatric evidence at the trial for the purpose of showing a mental disability short of insanity which prevented or made unlikely premeditation or deliberation at the time of the homicide, is the scope of the State's psychiatrists' examination any more limited than where the defense is insanity? Undoubtedly the examiners for both defense and State would require the defendant to discuss the criminal event with them. It seems highly unlikely that they could form an opinion on the is-

sues of premeditation and deliberation unless defendant discussed his knowledge or recollection of the homicide with them. Under the circumstances, there is no sound reason why the rule should be any different from that applicable where the defense is insanity.

Finally, if after examination by doctors of his own selection, defendant intends to offer under *State v. Mount, supra,* background proof, including psychiatric proof of mental weakness or instability short of insanity, for consideration by the jury on the issue of punishment, is the State's right to examination more circumscribed than in the two situations already mentioned? The solution here must be left largely to the trial court's discretion. It is not so likely that either defense or prosecution psychiatrists will require discussion of the homicide with the accused in order to express an opinion on his general mental condition. If, however, the defense psychiatrists obtained such information from him, in fairness and justice the State should be permitted to cover the subject also. Under our practice defendant's proof in this area will come into the trial after the State has completed its main case. If his psychiatrists testify about their discussion of the homicide with him, there is no sound reason why the State's doctors may not do likewise. If defendant refused to discuss the homicide with the State's doctors when they examined him, the trial court in its discretion may recess the trial to permit such further examination as the State, after consulting its psychiatrists, asserts is necessary to meet the position of the defense. This type of problem, *i. e.,* possible interruption of the trial, can be avoided, however, if there is fair and sensible communication between defense counsel and the prosecutor. To illustrate, in cases where the defense of insanity has not been interposed and consequently the State has had no psychiatric examinations, if the defendant, as the result of such examinations of his own, decides to introduce mental condition testimony bearing upon degree of murder or under the *Mount* doctrine, the prosecutor

should be given notice in advance of trial so that he may seek similar examinations.

 A cautionary admonition must be given with regard to psychiatric examinations obtained by the State. Having in mind that the accused's statements to the doctors are admissible solely on the mental competency issue and not at all on guilt, they cannot be used by the prosecutor as avenues of further investigation on the issue of guilt. Any inculpatory evidence derived from such a source cannot be admitted at the trial.

 The prosecutor advanced the view at oral argument that regardless of the issue of insanity or any other defense claim based upon a mental condition, he ought to be allowed to have an early psychiatric examination to aid him in deciding whether to seek the death penalty. Although, from a practical standpoint many defendants might be willing to undergo examination for that purpose, in our judgment it should not be compelled unless and until the accused injects insanity or some other relevant mental condition into the case.

For the reasons stated the order denying bail is remanded for further proceedings, and the order for the psychiatric examination is set aside.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 6.

*For affirmance* — None.