THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFF DRAYTON, JR., Defendant-Appellant.

(No. 55713;

First District—August 31, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Lee T. Hettinger and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Daniel Pierce, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with aggravated kidnapping, armed robbery, attempt rape and battery. The armed robbery charge was reduced to robbery, and a jury found defendant guilty of all four charges. The court sentenced him to 15 to 25 years for aggravated kidnapping, 8 to 15 years for robbery, 6 to 12 years for attempt rape and 6 months for battery, the sentences to run concurrently. On appeal, defendant argues that he was denied a fair trial by the improper remarks of the prosecutor during closing argument; that the court erred in communicating with the jury in the absence of defendant and his counsel; and that the court erred in denying defendant's motions to suppress physical evidence and identification testimony.

The victim, an 18-year-old girl, testified that on February 17, 1969, at about 8:30 P.M., she was walking west on 104th Street in the City of Chicago. As she approached Calumet, a car turned onto 104th Street. She continued walking west and, as she came to the next street, Forrest, she saw a man walking toward her from Prairie Avenue. She observed the man for about three to five seconds before he started walking toward

her. She had occasion to look at him as he walked toward her, and when he was about ten feet away, the street lighting provided a good opportunity to observe the man. The victim described him as a Negro, about 5'7", small build, with a large natural haircut, wearing a black three-quarter length coat and no hat.

As the man walked by, he turned around, put his arm on her shoulder and told her to keep walking. As her assailant did this, she had another opportunity to look at his face. His other hand was in his pocket, and he put it to her side in a manner indicating that he had a weapon. He walked with her to a 1967 avocado green Camaro, the same car she had observed turning in front of her a few minutes earlier. He ordered her to shut her eyes, and forced her into the front of the car with her body down. As he drove away, he covered her head with a towel.

While driving, her assailant removed a ring from her finger and some cash from her purse, and he threw the purse and ring in the back seat. He eventually stopped the car, and ripped the towel covering her head in two. He threw half the towel into the back seat and blindfolded her with the other half. He unbuttoned her coat and told her to remove it. While her coat was half off, she started screaming and kicking him and scratching his face and arms. He was striking her on the head. Opening the door, she rolled out of the car. She removed her blindfold and watched her assailant drive away.

The victim ran to a nearby house and called the police. When they arrived, she related the incident to them. While enroute to the hospital in a squad car she heard on the radio that other officers had found a suspect. She was immediately driven to where the other officers were waiting with the suspect. She identified the car and the defendant. She gave the police the half of the blue and white towel which had been tied around her eyes. She made an in-court identification of the defendant as her assailant.

Officer John Bickham of the Chicago Police Department testified that on the evening in question he was called to 425 West 99th Street in Chicago. There the victim told him about the incident and said she had been abducted in a 1967 Camaro. She described being blindfolded by part of a towel, and the police officer saw a torn piece of the towel in her possession. After getting a description of the vehicle, Bickham and his partner proceeded to tour the neighborhood. About five minutes later, they observed a car fitting the description, a 1968 Camaro, being driven by defendant, at 99th and Normal. Officer Bickham first stated that the Camaro was gold, then described it as goldish green. As the car pulled over, the officer observed that the driver fit the description of the assail-

ant. When the defendant exited from the Camaro, Officer Bickham noticed fresh scratches on his face. The officer flashed his light into the back seat and noticed a torn towel on the floor. He subsequently observed the victim drive up to the scene in the sergeant's car, and a few moments later, he was instructed to arrest defendant.

Bernadette Kwak, a microanalyst for the Chicago Police Department, testified for the State that the piece of towel given to the police by the victim and the piece of towel removed from defendant's car were originally part of the same towel.

Laneare Drayton, wife of defendant, testified for the defense that on the evening in question she had an argument with defendant. During that argument, she scratched his face and arms. As a result, defendant drove to the drug store for mercurochrome. Defendant did not testify.

Defendant's initial contention is that the prosecutor denied him a fair trial by improperly commenting on the failure of the defendant to testify in his own behalf. During closing argument, the prosecutor remarked as follows:

"How did human blood get on the towel? * * * So these are all factors, ladies and gentlemen, these are all ramifications to corroborate or bolster * * * identification of this man and all the circumstances as they build up one upon the other and they ultimately get down to this towel, which he can't refute and as he even in no way tried to . * * *"

■■ A direct reference by the State in its argument concerning defendant's failure to testify is prejudicial error. (*People v. Cheney*, 405 Ill. 258, 90 N.E.2d 783; Ill. Rev. Stat. 1967, ch. 38, par. 155—1.) However, it is permissible for the prosecutor to comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself. (*People v. Mills*, 40 Ill.2d 4, 237 N.E.2d 697.) The standard used to determine whether the closing argument is improper is whether the reference in closing argument was intended or calculated to direct the jury's attention to the defendant's neglect to exercise his right to testify. *People v. Burton*, 44 Ill.2d 53, 254 N.E.2d 527; *Watt v. People*, 126 Ill. 9, 18 N.E. 340.

■■ Under the foregoing criteria, we find that the prosecutor's comments in closing argument were not improper. In our view, the remarks did not direct the jury's attention to the failure of defendant to testify, but rather emphasized that there was no evidence contradictory to the State's explanation of the two halves of the towel. The torn towel fully corroborated the identification testimony of the victim. The prosecutor's remarks emphasized that the defense could not and did not refute the

evidence concerning the towel. The comments were directed to the evidence of the towel, and not to the defendant as a witness.

Cases cited by defendant in support of his argument that the remarks were improper are clearly distinguishable from the instant case. In *People v. Burton*, 44 Ill.2d 53, 254 N.E.2d 527, the court held the following remarks to be an improper comment on defendant's failure to testify:

> "He's got to explain the blood on his pants  *  *  *  Do we hear one iota of evidence that he did not cut himself? No.  *  *  * There is no explanation for that blood on his pants from him but there is an explanation." 44 Ill.2d at 55-56.

In *Burton*, the remarks were clearly improper. The prosecutor argued to the jury that the burden of explaining the presence of blood was that of the defendant, and that he had failed to meet that burden. In the case at bar, the prosecutor merely commented on the failure of the defense to rebut the evidence linking the torn towel to the defendant. In *People v. Wollenberg*, 37 Ill.2d 480, 229 N.E.2d 490, the Supreme Court held that the prosecutor's comments were improper because defendant, although he did not testify, offered evidence which contradicted that of the prosecution. Defendant insists that *Wollenberg* is applicable to the instant case because defendant's wife testified as to a partial alibi and as to how defendant sustained his facial cuts. However, *Wollenberg* is distinguishable from the instant case by the fact that in this case the State's evidence connecting the two halves of the towel was never rebutted or contradicted in any manner by the defense.

Defendant's next contention is that the trial court committed reversible error in communicating with the jury in the absence of defendant and his counsel. At about 12:35 A.M., some time after the jury had commenced its deliberations, the jury was returned to the courtroom, and the following colloquy occurred:

> "THE COURT: The court would like to inquire at this time whether you have made any progress in your determination and whether you feel if you were given a little more time, you would be able to reach a verdict?
>
> THE FOREMAN: Yes sir, we do.
>
> THE COURT: You have made sufficient progress to do that?
>
> In that case, we will take them back and deliberate a little bit longer, and see if you could reach your verdicts then. If you could do that, all right."

■■ Before a jury verdict will be set aside because of an unauthorized communication with the jury either by the court or by third persons outside the presence of the defendant, it is necessary for defendant to show prejudice. (*People v. Williams*, 38 Ill.2d 115, 230 N.E.2d 224; *People v.*

*Berry,* 18 Ill.2d 453, 165 N.E.2d 257.) And prejudice will not be gratuitously assumed in such instances. *People v. Canaday,* 49 Ill.2d 416, 275 N.E.2d 356.

■■ Although the practice of a court communicating with a jury outside the presence of defendant should not be encouraged, we do not believe under the circumstances of this case that the absence of defendant when the court inquired as to whether the jury needed more time for deliberation constituted reversible error in the absence of a showing by defendant that he was thereby prejudiced. Defendant argues that the communication prejudiced him by coercing a minority of jurors who believed defendant not guilty to change their votes to guilty. However, this argument is sheer speculation. The inquiry contained no connotations of coercion or suggestive pressure on the part of the judge. That fact is even more apparent when it is noted that the jury deliberated two hours longer after the inquiry by the judge.

The case, *People v. Rohwedder,* 78 Ill.App.2d 211, 223 N.E.2d 1, cited by defendant as dispositive of the issue, is distinguishable from the instant case. In that case, the chief judge, who had not tried the case, inquired as to the deliberations of the jury. The inquiry was made at 4:30 P.M. The court held that the colloquy between the chief judge and the jury out of the presence of defendant and his counsel constituted reversible error. In the instant case, it was the trial judge who made the inquiry. Additionally, the time of the communication, after midnight, demonstrated concern for the jury's comfort rather than coercion. We do not believe that the instant inquiry of the jury constituted reversible error.

Defendant's third contention is that the court erred in denying defendant's motion to suppress the physical evidence. He argues that, because the police did not have probable cause to stop the car, the arrest was unlawful and all physical evidence obtained by the police as a result should have been suppressed. In making this argument, defendant stresses that the victim described her assailant's car as an avocado green 1967 Camaro, while the officer stopped a 1968 Camaro which he described as gold.

■■ Whether probable cause exists for an arrest in a stated factual situation depends upon the totality of the facts and circumstances in that case. (*People v. Gwin,* 49 Ill.2d 255, 274 N.E.2d 43.) An officer investigating a reported crime has the right in the course of that investigation to make "brief threshold inquiries of a citizen." *People v. Howlett,* 1 Ill.App.3d 906, 910, 274 N.E.2d 885.

■■ In the instant case, the victim had informed the police that her assailant was a male Negro wearing a natural hairstyle and driving an

avocado green 1967 Camaro. She also said that she had scratched her attacker on his face and arms. A few minutes later and just a short distance away, the police observed a man fitting that description driving a 1968 Camaro. Although the police report indicated that the Camaro was gold and at one point the officer stated that it was gold, the officer subsequently testified that the car was goldish-green. Moreover, as they halted the Camaro, the police observed fresh scratch marks on the face of the driver of the car. The totality of the facts of this case was more than sufficient to create the probable cause necessary to support a lawful arrest.

■■ Defendant's final argument is that the court erred in denying his motion to suppress the in-court identification testimony of the victim. He maintains that the pre-trial identification confrontation with the victim was so suggestive as to violate due process of law. (*Stovall v. Denno,* 388 U.S. 293.) However, in *Stovall* the court held that whether or not a due process violation occurs depends upon the totality of the circumstances of the confrontation procedures. One of the facts to consider in deciding whether a defendant was prejudiced is the lapse of time between the criminal act and the contested identification. *People v. Knowles,* 130 Ill.App.2d 78, 264 N.E.2d 716.

■■ In the instant case, the victim identified defendant at the scene of his arrest just a few minutes after she escaped from his car. The immediate on-the-scene confrontation was proper police investigative conduct made while the victim's memory of her attacker was fresh. (*People v. Lynch,* 111 Ill.App.2d 52, 249 N.E.2d 649.) It enabled the police to determine whether defendant was the assailant and also afforded defendant the opportunity to be freed if he were not identified.

■■ Even if we were to determine that the confrontation was grossly suggestive, the in-court testimony of the identifying witness would still be admissible as long as the record clearly revealed that the witness's prior observation of defendant was sufficient to serve as an independent origin for the in-court identification. (*People v. Cook,* 113 Ill.App.2d 231, 252 N.E.2d 29.) As we have noted, the victim here had ample opportunity to observe her assailant under what she described as good lighting conditions. Her prior observation was more than sufficient to serve as an independent origin for the in-court identification.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.