297 So.2d 63 (1974)
Raymond G. STANSEL, Jr., Petitioner,
v.
STATE of Florida, Respondent.
No. 74-685.
District Court of Appeal of Florida, Second District.
June 18, 1974.
*64 Bernard H. Dempsey, Jr., Tampa, for petitioner.
E.J. Salcines, Jr., State Atty., Tampa, for respondent.
PER CURIAM.
Petitioner was recently indicted by the Statewide Grand Jury on a charge of conspiracy to possess marijuana. At the time of his arrest, bail was fixed at $1,000,000. Petitioner filed a motion for reduction of bail. Following the taking of extensive testimony, the circuit judge entered an order reducing the bond to $500,000.
Petitioner has now filed a petition for writ of habeas corpus in this court asserting a deprivation of constitutional rights by reason of an excessive and unreasonably high bond. A record containing 850 pages of testimony and numerous exhibits have been filed with this court.
During the course of the proceeding below, the state submitted certain evidence to the judge in camera over petitioner's objection. The State Attorney represented this evidence to be the record of certain testimony given before the Grand Jury on *65 the subject of petitioner's likelihood of flight. The State Attorney stated that several lives could be in jeopardy should the name of the witness or witnesses who gave this testimony become known. Thus, defense counsel and the defendant do not know the substance of the evidence received in camera by the lower court. The order entered by the court did not refer to the in camera evidence, so it cannot be determined the extent to which such evidence may have influenced the ruling.
One of the bulwarks of American jurisprudence is the right to be confronted by the witnesses who testify against you and to have those witnesses subjected to cross-examination. Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). There can be no doubt that to accept in camera evidence during the course of a criminal trial would constitute a violation of fundamental constitutional rights. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The question we must consider is whether such rights carry over to a bail proceeding.
By dictum in two cases, the Supreme Court has indicated that the same rights apply. In Ex parte Nathan, Fla. 1908, 50 So. 38, which was a habeas corpus proceeding to set bail in a capital case, the court said that "a usual right to cross-examine and impeach witnesses exists as to the state and the petitioner." Likewise, referring to testimony concerning whether the proof of guilt was evident or the presumption great for purposes of setting bail in a capital case, the court in State v. Kelly, Fla. 1953, 68 So.2d 351, said:
"The accused has the right to a full opportunity to examine State's witnesses as to the elements of crime of murder in the first degree and a full hearing should be afforded him for that purpose."
The official transcript of the testimony given before the grand jury by an eyewitness to a murder was held to be incompetent evidence in a bail reduction hearing in Young v. Russell, Ky.App. 1960, 332 S.W.2d 629. See also State v. Obstein, 1968, 52 N.J. 516, 247 A.2d 5. There is a clear distinction between protecting the identity of a confidential informant in determining the admissibility of relevant evidence and permitting unknown testimony by unknown witnesses to be considered as substantive evidence. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).
While a bail reduction hearing does not necessarily have all the formalities of a trial, it is clearly an adversary hearing. cf. Primm v. State, Fla.App.2d, 1974, 293 So.2d 725. To permit the trier of fact to receive evidence in secret from one side would place the other side in an untenable position. There could be no way in which the evidence could be rebutted because it would not be known what the evidence was. Therefore, we hold that the court erred in having received and read the in camera testimony.
There remains the problem of making an appropriate disposition of the case. One alternative would be to refer the matter once again to the trial judge and ask him to enter a new order in which the in camera evidence would not be considered. This doesn't seem fair and would probably be impossible anyway since the judge could hardly be expected to be able to exclude such evidence from his consideration.
Another alternative would be to require the parties to start over with a new trial judge. However, there has already been substantial time and effort expended upon the issue and petitioner is entitled to a reasonably prompt determination of what his bond is finally going to be. Therefore, we have concluded to consider the matter ourselves upon the record which was made below following the procedure approved by the Supreme Court in State ex rel. Scaldeferri v. Sandstrom, Fla. 1973, 285 So.2d 409. In that case the court said:
"... Or if there has been a circuit court adjudication upon motion either to *66 increase or reduce bail under CrPR 3.130(f) And there is a sufficient accompanying record thereon, then it is proper in that instance also, for consideration in the appellate court upon original habeas corpus... ."
In our consideration of this question we have expressly declined to accept or to look at the in camera record which was submitted to the trial court.
Until adjudged guilty, every person charged with a crime other than a capital offense or an offense punishable by life imprisonment is entitled to release on nothing more than the posting of reasonable bail. Art. I, § 14, Fla. Const., F.S.A. Among the factors to be considered in determining the amount of bail are the nature of the offense and the penalty for it, the accused's character and reputation, his general financial status, his family ties and employment, the state of his health, the length and stability of his residence in the community, his accessibility to means of flight, his respect for law, and his record of appearing or failing to appear at prior court proceedings. See 8 Am.Jur.2d, Bail and Recognizance, Sec. 71; cf. Younghans v. State, Fla. 1956, 90 So.2d 308.
The evidence reflects that petitioner has a wife and four children. He maintains a home in Tarpon Springs but spends at least six months away from home each year. Petitioner's wife testified that when he is gone she does not normally know how to contact him even in emergency situations. She said that petitioner has suggested that they ought to move to Central America. However, petitioner testified that these were long-range plans that he was considering only after his children were grown. The entire family now holds valid passports.
Petitioner stated that he was a commercial fisherman and a seafood broker and consultant. He said he owned a 1% interest in a business in Tarpon Springs known as Blue Chips Fisheries, though he recently executed a document reflecting the sale of this company for $250,000 in which it was stated that he was the principal stockholder. However, petitioner's main business interests lie outside of the United States. He has shares in a Honduran fishing company named Pesqueros de Honduras and a Honduran boat building company known as Mariscos de Bahia. Petitioner claimed to have a very small interest in each of the companies, yet he has handled substantial amounts of money for one or both of them. He also said he represents a seafood company named Terra Investments and Trading Company of the Republic of Panama but says he receives no compensation from the company. He also testified as having business interests in Nicaragua and the Cayman Islands, British West Indies.
Petitioner acknowledged ownership of a boat worth about $25,000. He did not know its whereabouts, having entrusted it some time ago to a person whose last name he does not recall. He has owned several other boats during the past year having a total value of more than $350,000. He said he was only holding title to these boats as agent for others and that they were in the process of being transferred to Pesqueros. He has several safety deposit boxes, one of which contains between $5,000 and $10,000 in cash. He has also kept cash hidden in his boat house. He bought and sold $34,000 of gold certificates last year. At the time of his arrest, he was carrying checks on Swiss Bank Corporation of the Republic of Panama but he denied ownership of an account in that bank.
Petitioner's 1973 income tax return reflects a taxable income of $67,764.39. He was unclear concerning the source of this income. At the time of his arrest, petitioner had more than $25,000 on his person. He said that some $14,000 of this money was his, and the balance belonged to one of the companies that he represents. He declined to indicate the source of the money. The evidence reflects that in 1972 more than $550,000 had been transferred into a Cayman Islands bank account over which he had control. He claimed that such monies did not belong to him and were only used by him to purchase boats *67 for other parties. From a perusal of the record, one readily concludes that petitioner has easy access to large sums of money. In short, petitioner appears to be a man who has substantial money at his disposal, yet who has no readily apparent source of income.
Petitioner has travelled extensively all over the world. In fact, he has visited twelve countries in the last thirty days. He has applied for residence in Honduras, which he says was necessary in order to obtain a work permit. In his possession at the time of his arrest was a tourist visa executed in blank for the country of Nicaragua.
On the application for Honduran residence, petitioner stated that he was single and had no children. In the past several weeks, he has travelled extensively with a woman other than his wife. Recently he registered in a motel under the name of Raymond Wood giving a Panamanian address.
Petitioner was arrested in Louisiana in 1973 for possession of drugs and for resisting arrest. He was carrying more than $4,000 in cash at the time. Ultimately, all charges were dropped and he pled guilty to a charge of resisting an officer. In his wallet at the time of his recent arrest were photographs of marijuana. The U.S. Government previously filed a lien against him for back taxes of $250,000, but this has now been settled for $12,500.
Petitioner has access to private airplanes and flew into Florida from outside the United States in such an airplane less than a week before his arrest. A customs officer testified petitioner told him he was the pilot but petitioner denied this. Petitioner claims to have only just begun taking flying lessons.
Considering the totality of the evidence in light of the applicable criteria, it is our considered conclusion that bail in the amount of $500,000 is appropriate to insure petitioner's presence at trial and yet is not excessive nor unreasonably high.
Subsequent to the filing of this petition, the state sought to have petitioner's bond increased. The trial judge declined to entertain the state's motion while the petition for writ of habeas corpus was pending in this court. The state then filed a petition requesting us to relinquish jurisdiction in order for the state to pursue its motion below. Our judicial labor having been concluded by the rendering of this decision, the state's petition for relinquishment of jurisdiction is now moot. Further motions for increase or decrease of the bond should be made to the trial court. Because of the problem incident to the in camera testimony, should further proceedings be necessary below relating to the increase or decrease of the bond, we believe it would be best if these were heard before another judge. In such case, the record of the prior proceeding now on file in this court will be made available upon request of either party.
The petition for writ of habeas corpus is hereby denied.
HOBSON, Acting C.J., and BOARDMAN and GRIMES, JJ., concur.