636 A.2d 1103

STATE OF NEW JERSEY, PLAINTIFF,
v. JOHN EMIL LIST, DEFENDANT.

Superior Court of New Jersey
Law Division Union County

Decided March 29, 1990.

264

*Eleanor Clark* and *Brian D. Gillet,* Assistant Prosecutors, for the State (*John H. Stamler,* Union County Prosecutor, attorney).

*Elijah L. Miller, Jr.,* Deputy Public Defender, for the defendant (*Wilfredo Caraballo,* Public Defender, attorney).

WERTHEIMER, J.S.C.

This matter comes before the court on a motion by defendant for an order precluding the State's psychiatric expert, during the course of the State's psychiatric examination of defendant, from "questioning the defendant whether he killed the decedent," as set forth in the indictment. Defendant further moves to have said examination witnessed by its own expert or to have it videotaped. The parties agreed to have the matter decided on the papers.

Defendant was indicted in 1971 for the murder of his three children, wife and mother in Westfield, New Jersey. He is awaiting trial before this court after waiving extradition from Virginia last year.

Both the State and the defense concur that this application is governed by the holdings in *State v. Whitlow,* 45 *N.J.* 3, 210 *A.*2d 763 (1965), and *State v. Obstein,* 52 *N.J.* 516, 247 *A.*2d 5 (1968), overruled on other grounds in *State v. Engel,* 99 *N.J.* 453, 473, 493 *A.*2d 1217 (1985), although the State questions the reason why the motion is being made at all. Of course, the State has no right to a psychiatric or psychological examination unless the defendant places his mental state in issue. *Id., 52 N.J.* at 531, 247 *A.*2d 5.

That appears to be the situation in this case, as defendant's attorney has supplied the State with the reports of one forensic

psychologist, Alan M. Goldstein, Ph.D., dated January 24, 1990, and one psychiatrist, Shelton I. Miller, M.D., dated October 25, 1989. Goldstein's report is fourteen pages long; Miller's is five. Neither report concludes that defendant is not criminally responsible for his conduct by virtue of legal insanity. Rather, both seem to be couched more in the vein of the "diminished capacity defense" codified by *N.J.S.A.* 2C:4–2, i.e., that "defendant did not have a state of mind which is an element of the offense" required for the crime of murder.

This case refers to events that allegedly occurred in November 1971. Thus, the applicable statutes are *N.J.S.A.* 2A:113–1 and –2. Therefore, there are several states of mind that are relevant. "Malice" is the state of mind that differentiates murder from manslaughter under Title 2A. *State in Interest of S.H.*, 61 *N.J.* 108, 293 *A.*2d 181 (1972). Without a finding of malice a defendant could not be convicted of either first or second degree murder. If malice is found, the murder is presumed to be in the second degree, unless the State proves beyond a reasonable doubt that the killing was "willful, deliberate and premeditated." *State v. Christener*, 71 *N.J.* 55, 64, 362 *A.*2d 1153 (1976). These are the elements that distinguish first degree murder from second degree.

It is Goldstein's "forensic opinion" that "(w)hile (defendant) recognized the nature, quality and wrongfulness of his actions ... such actions were not the result of malice." Thus, if he is believed, defendant could not be convicted of either first or second degree murder. While he does not expressly say so, one could also infer from Goldstein's report that defendant did not act willfully either but was driven by a host of family problems, perceptions and religious precepts to perform the acts in question.

In light of the potential of such positions, the State wishes to have its own expert examine defendant. The Supreme Court's opinion in *State v. Whitlow, supra,* 45 *N.J.* at 26, 210 *A.*2d 763 (emphasis added), sets forth parameters for such an examination:

"(2) The State has the right to a psychiatric examination; defense experts may be present;

(3) If its experts can form an adequate opinion of the defendant's sanity by observation and physical examination alone, their action should be so limited;

(4) If a psychiatric interview with defendant is required for the purpose, and an adequate opinion can be reached without inquiry into the circumstances surrounding the alleged criminal event, the interview should be so restricted;

(5) If an adequate opinion cannot be formed without inquiry into the circumstances attending the alleged crime the inquiry should be made."

*Whitlow* goes on to address defendant's cooperation and the limited evidential value of inculpatory statements made by defendant, i.e., their relevance is limited expressly to the issue of diminished capacity and the statements are not admissible on the issue of guilt. *Cf. Ev.R.* 6.

This Court cannot perceive how under the circumstances of this case the State's psychiatrist can form an "adequate opinion" of defendant's mental status without covering the events in question. This is primarily because it is apparent that defendant's experts have covered that area in their examinations. Notably, Goldstein opined: "(to) formulate an opinion, there is the need to reconstruct the past ... through the defendant's recollections (among other things)." Goldstein's report, p. 13–14. Further, Goldstein concluded: "Mr. List was aware of both the nature and quality of his act ... he was capable ... of determining that his actions were wrong". Goldstein comments on defendant's "plan" and execution of it. On page 9 of his report, as a part of defendant's "background and developmental history", Goldstein refers to the reasons why List admittedly performed these acts: "I guess I just gave up ... I thought the kindest thing was to kill them to keep them from having to suffer later." It is also obvious from Miller's report that he discussed the commission of the crimes themselves with defendant and based his opinion at least partially on that.

For this court to preclude the State's expert from the same areas of inquiry would obviously expose him to cross-examination that could intimate he was less thorough, his examination less complete, and his opinion, therefore, more suspect that those of the defendant's experts. That would not be fair, and in light of his

own expert's examination in the area in question, neither is defendant's request that the State be precluded from questioning defendant about his mental state at the time of the offenses.

As the U.S. Supreme Court observed in *Williams v. Florida*, 399 *U.S.* 78, 82, 90 *S.Ct.* 1893, 1896, 26 *L.Ed.*2d 446 (1978): "The adversary system of trial is hardly an end in itself; it is not a poker game in which players enjoy an absolute right always to conceal their cards until played."

As defendant's experts have already developed in reports supplied to the State that defendant has admitted to the killings, the court understands the State's bewilderment as to why this motion has been brought.

This holding is consistent with the Supreme Court's discussion in *State v. Obstein, supra,* 52 *N.J.* at 526–30, 247 *A.*2d 5, which specifically noted that when an accused intends to offer psychiatric evidence to establish a mental disability short of insanity, "undoubtedly, the examiners for both defense and State would require the defendant to discuss the criminal event with them. It seems unlikely that they could form an opinion on the issue of premeditation and deliberation unless defendant discussed his knowledge or recollection of the homicides with them." *Id.* at 529–30, 247 *A.*2d 5.

■ Finally, either the State may permit defendant's expert to attend its examination or it should videotape it. Clearly, defendant is entitled to this relief. *State v. Whitlow, supra,* 45 *N.J.* at 26, 210 *A.*2d 763. Defense counsel suggests that videotaping would be less intrusive, and while the court agrees, it will leave the option to the State in which of the two ways it wishes to proceed.