110 N.J. Super. 352 (1970)
265 A.2d 561
STATE OF NEW JERSEY, PLAINTIFF,
v.
NINO MACCIOLI, DEFENDANT. STATE OF NEW JERSEY, PLAINTIFF,
v.
GERALDINO CUSTODE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 13, 1970.
*353 Messrs. Anthony Mautone and Robert Podvey for plaintiff (Mr. Joseph P. Lordi, Essex County Prosecutor).
Mr. Angelo R. Bianchi for defendant Maccioli.
Mr. Victor Freda for defendant Custode.
Motions for hearing on revocation of bail FUSCO, J.S.C.
This is a motion by the State for a hearing pursuant to R. 2:9-4, to revoke bail pending appeal on two defendants who have since been indicted for offenses similar to the subject matter of their original convictions.
Nino Maccioli was found guilty by a jury on April 28, 1969 of conspiracy to violate lottery laws (Ind. 2224-67), along with 18 other codefendants, and of possession of lottery papers (Ind. 2230-67). He was sentenced on June 11, 1969 to a term of one to two years in State Prison on each count, the terms to run concurrently, and was fined $1,000 on each count. He was allowed bail pending appeal in the sum of $5,000. Geraldino Custode was found guilty by the same jury of the same conspiracy indictment and of possession of lottery slips (Ind. 2233-67). He was sentenced on *354 the same date to the same term as Maccioli. He was also allowed bail pending appeal in the sum of $5,000.
On May 11, 1970 Maccioli pleaded not guilty to one count of bookmaking (Ind. 2590-69), and Custode pleaded not guilty to one count of maintaining a gambling resort (Ind. 2564-69). The State then moved to revoke their bail pending appeal of the 1969 convictions, under R. 2:9-4, which reads, in part, "A judge or court allowing bail may at any time revoke the order admitting to bail."
In yet another case arising from the same 18-defendant 1969 case in which a defendant admitted to bail pending appeal was indicted for a subsequent similar offense, the Supreme Court has ordered that the trial court conduct a hearing at which it must determine whether there is a basis upon which a jury could reasonably find that defendant was guilty of the subsequent alleged offense or offenses. State v. Sarrechia, (Docket M-159, March 2, 1970). This order followed a determination of the trial court pursuant to R. 2:9-4 that defendant's actions "seriously threatened the safety of the community."
At the outset of the hearing the court announced that the hearing should follow the outline suggested in State v. Obstein, 52 N.J. 516 (1968). The hearing should be in camera unless there is objection by defendant; ex parte affidavits by the state are not admissible if there is objection, and defendant has a right to cross-examination and to confrontation of witnesses. The court, however, would not determine guilt or innocence, would not weigh credibility of witnesses and would not resolve conflicts between exculpatory and inculpatory facts. The fact that defendants were subsequently indicted would not be a sufficient basis on which the court could find that the jury reasonably could find the defendants guilty. At 522-524. In addition, the court would not consider the possible legality of any search or arrest warrants or any methods of surveillance, as these would more properly be the subject matter of formal pretrial motions.
*355 This procedure is challenged by defendants on the grounds that it does not allow for the standards of R. 2:9-4 to be met, that it is contrary to federal case law, that the Obstein standards are inapplicable, and that the court does not have proper jurisdiction.
The State argues that compliance with the Supreme Court order in Sarrechia is compatible with the substance of R. 2:9-4, that the procedure is in accord with controlling case law, and that the court does have proper jurisdiction.
It appears that this type of action has never been litigated in this State in a reported case.
Defendants argue that the determination which must be made by the court on an application for bail pending appeal must also govern on a hearing for revocation after a subsequent conviction: that is, there shall be bail unless it appears the appeal is taken on unsubstantial grounds, or for purposes of delay, or that the safety of the community may be seriously threatened if the defendant remains at large.
Reliance is had on Sellers v. United States, 89 S.Ct. 36, 21 L.Ed.2d 64 (1968), as authority for the proposition that denial of bail should only lie where it relates to "some kind of danger that so jeopardized the public that the only way to protect against it would be to keep the applicant in jail." At 38. In that case, defendant was convicted of refusal to submit to induction in the armed services, and was subsequently arrested, apparently in another jurisdiction, for "inciting and participating in arson, destruction of property and conspiracy." Since it was held that the refusal to submit to induction conviction "does not indicate that [defendant] will be a threat to the community if released," the application for bail was granted. Id.
Sellers is distinguishable from the case at bar and inapplicable on several critical grounds, however. First, and most significantly, Sellers is not a decision of the entire Supreme Court, but is, rather, a memorandum by one justice, Justice Black, in his capacity as Circuit Justice for the Fifth Circuit. As such, it is not binding on this court. *356 In addition, though, Sellers is an application for bail and not a hearing for its revocation. Also, defendant's subsequent indictment was neither an offense similar to his original conviction nor did it appear to be part of the same plan or scheme.
Similarly, defendants' reliance on Roth v. United States, 77 S.Ct. 17, 1 L.Ed.2d 34 (1956), is misplaced. Roth's application for bail came only after an original conviction under an obscenity statute, and the decision (by Justice Harlan in his similar capacity as Circuit Judge) turned largely on the fact that it seemed likely that the Supreme Court would grant certiorari. At 19.
The State argues that the rationale behind United States v. Erwing, 268 F. Supp. 877 (N.D. Cal. 1967), should bind the court in this case. There, where defendant had been convicted on three counts of illegal sale of heroin, it was ordered that bail be revoked:
The court cannot ignore the fact that there is reasonable cause to believe that the defendant is still engaged in his nefarious business. When this fact is placed alongside the defendant's history of narcotics peddling then there is every reason to believe that if bail were not revoked the defendant would resume his harmful calling.
The community must be protected from violations of the law which prey on the weaknesses of mankind. A wholesale drug peddler, such as the defendant, exploits this weakness and, in doing so, certainly poses a danger to the welfare of the community. [at 879]
It is opposed in this regard by defendants who contend that a gambling offense is malum prohibitum (wrong because it is prohibited), and thus not a danger or threat to the community, while heroin sale is malum in se (wrong in itself), and thus a danger to the community. They argue that there can be no danger to the welfare of the community inherent in a gambling offense which, admittedly, does not in itself carry with it the onus and spectre of violence.
The court cannot accept this reasoning on two divergent grounds: first, it is not of the opinion that narcotics offenses are malum in se,; rather, it treats narcotics crimes as malum *357 prohibitum, and on this basis cannot distinguish Erwing from the instant cases. Also, it does not agree that offenses such as gambling pose no danger to the welfare of the community.
In fact, gambling offenses, along with what are commonly considered to be white-collar crimes (embezzlement, bribery, fraud, income tax evasion), have in many ways the "great[est] and [most] threatening impact on the nation." The Challenge of Crime in A Free Society (Avon ed. 1968), at 438. The politically and culturally oriented crimes of which Sellers and Roth were convicted do not have the pervasive effect on society that organized, business crime has. Indeed, even the individual "spontaneous" act of violence is probably much less of a threat to society at large. See Ibid., at 24.
Where a defendant had been convicted of interstate transportation with forged securities and where seven other criminal proceedings were pending against him, the Federal Bail Reform Act (18 U.S.C.A. § 3148), similar for these purposes to R. 2:9-4, was construed to permit "consideration of the defendant's propensity to commit crime generally even where only pecuniary, and not physical harm might result to the community at large." United States v. Louie, 289 F. Supp. 850, 852 (N.D. Cal. 1968). The court emphasized, "Nothing in the history of section 3148 suggests that only that crime which threatens the physical safety of the community may be a basis for denying bail." Id.
Furthermore, in a tax evasion case, where defendant applied for bail pending appeal, denial was premised on the court's observation that "there is no escape from the conclusion that defendant's business is a continuous day-to-day commission of felonies under state law." U.S. v. Schuerman, 79 F. Supp. 250, 251 (E.D. Mo. 1948).
See also, Carbo v. United States, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962) (bail denied pending appeal following convictions for racketeering and extortion).
This court is also cognizant of the policy outlines laid out by our Supreme Court in State v. Ivan, 33 N.J. 197 (1960) *358 as to the effect of gambling convictions. There, the court distinguished syndicated gambling from "an isolated excursion beyond the pale of the law." Where the crime is a "calculated one" and part of a "widespread criminal skein," the individual defendant is "part and parcel" of a criminal enterprise which is an "ancient foe of society" and, as such, "merits stern treatment." At 202-203.
As trial court in the 18-defendant trial in 1969 at which both defendants Maccioli and Custode were found guilty, this court is cognizant of the scope of the gambling operations found therein, amounting to some $15,000 in play a day. If the admonition of the Supreme Court in Ivan is to have any effect, it must be implemented in a case such as this. See also, State v. DeStasio, 49 N.J. 247 (1967).
It is the opinion of this court, then, that activity such as that of which these defendants has been found guilty seriously threatens the safety of the community.
Defendants argue that the procedure outlined in Obstein, supra, is inapplicable, in that the suggestions there were designed for a pretrial hearing in a murder case. It is conceded that the facts of Obstein are certainly inapposite to the present situation; however, the delicacy and sensitivity with which a court must face a potential revocation or denial of bail are as clear in that case as the one at bar, and the "immutable factors" which must be considered are the same. See State v. Koningsberg, 33 N.J. 367, 372 (1960). The recitation of the proceedings in Obstein is both protective of a defendant's constitutional rights and comports with the requisites of due process.
Defendants further attack the jurisdiction of this court to hold this hearing on the grounds that it is not specifically contemplated by the court rules and that the motion by the State to revoke bail does not meet the specifications of R. 1:6-2.
This argument must similarly fall. The latitude allowed the trial court in R. 2:9-4 on bail revocation hearings certainly admits of the possibility of such a hearing *359 on a subsequent offense. The rules are to be construed "to secure a just determination, simplicity in procedure [and] fairness in administration." R. 1:1-2. Such a construction certainly gives the court the power to hear this motion. Similarly, R. 1:6-2 indicates, "A motion * * * shall be by notice of motion in writing unless the court permits to be made orally." (Emphasis added). The rationale of R. 1:1-2 applies to this rule as well.
Defendants finally urge that the order of the Supreme Court, entered in Sarrechia, supra, need not bind this court because it has not been published. Lack of publication can never rob a Supreme Court ruling of its efficacy.
This court, then, finds that defendants threaten the safety of the community, that the lead of the Sarrechia order should be followed, and that an Obstein-type hearing is warranted.
Upon the adducing of evidence and cross-examination of the witnesses in an in camera proceeding, it is the opinion of the court that a jury could reasonably find that both of these defendants are guilty of their subsequent offenses.
In both instances, bail on the 1969 convictions will be revoked.