STATE OF CONNECTICUT *v.* ALEXANDER M. LAFFERTY
(10916)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO. Js.

Argued January 4—decision released April 3, 1984

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert G. Appleton,* assistant state's attorney, for the appellant (state).

*Albert G. Murphy,* for the appellee (defendant).

GRILLO, J. This case comes before the court following two separate remands for articulation and clarification. See *State* v. *Lafferty,* 189 Conn. 360, 456 A.2d 272 (1983), and *State* v. *Lafferty,* 191 Conn. 73, 463 A.2d 238 (1983). Since we have a full record before us, we may now properly consider whether the trial court erred in concluding that under General Statutes § 53a-47 (a) (4) the release of an insanity acquittee who is a danger to property would not constitute a "danger to himself or others" and should be released.

A full history of this case is recited in the two previous *Lafferty* cases. It suffices to say here that the defendant was acquitted on the ground of insanity of embezzling $309,000 from his employer. At trial, the defendant presented evidence showing that at the time of the commission of the crimes, he was unable to conform his conduct to the requirements of the law as the

result of a mental defect known as pathological or compulsive gambling.[1] In response to our second remand for articulation, the trial court specifically found that "(1) the defendant, as a result of mental disease or defect, poses a danger to the property of others; and (2) the defendant is likely, as a result of a mental disease or defect, to commit crimes against property as defined in General Statutes Chapter 941 or Chapter 952." The trial court refused, however, to commit the defendant, believing that a person who posed only a danger to property was not "a danger to himself or others" within the meaning of § 53a-47 (a) (4).[2] For the reasons outlined in this opinion, we find error.

The sole issue presented in this case is one involving statutory construction. The language of § 53a-47 (a) (4) does not disclose whether the requisite "danger to himself or others" includes danger to property. Thus, we construe the term "danger" according to the "commonly approved usage of the language." General Statutes § 1-1 (a). Black's Law Dictionary (5th Ed. 1979) defines "danger" to mean "[j]eopardy, *exposure to loss or injury;* peril." (Emphasis added.) The term is similarly defined in the American Heritage Dictionary (1978) to refer to "[e]xposure or vulnerability to harm or evil; risk; peril." While these definitions are neces-

---

[1] General Statutes § 53a-13 then provided, in relevant part: "In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. . . . " This section has since been substantially revised. The General Assembly has recently enacted legislation providing that pathological or compulsive gambling may no longer be used as a defense. See Public Acts 1983, No. 83-486, § 1 (c).

[2] General Statutes § 53a-47 (a) (4) provides in relevant part: "If the court determines that the preponderance of the evidence at the hearing establishes that such person is mentally ill to the extent that his release would constitute a *danger to himself or others,* the court shall confine such person in a suitable hospital or other treatment facility." (Emphasis added.) This section has since been substantially revised. See Public Acts 1981, No. 81-301, § 2; Public Acts 1983, No. 83-486, § 2.

sarily imprecise, they clearly include a danger to property, such as the financial loss of over $300,000 in this case.

This construction finds additional support in the commentary of the commission to revise the criminal statutes, whose observations this court and the Appellate Session of the Superior Court have had occasion to note in several recent cases. See *State* v. *Perruccio,* 192 Conn. 154, 471 A.2d 632 (1984); *State* v. *Belton,* 190 Conn. 496, 461 A.2d 973 (1983); *State* v. *Anonymous (1980-5),* 36 Conn. Sup. 527, 416 A.2d 168 (1980). The commentary to § 53a-47 explains that " 'danger to himself or others'—*is not meant to be confined to physical danger;* thus, a kleptomaniac, who constitutes a danger to the property of others, might under appropriate circumstances be held to constitute such a danger." (Emphasis added.) Conn. Gen. Stat. Ann. § 53a-47 (West Ed. 1971), Commission Comment.

The conclusion that an insanity acquittee is dangerous when his conduct poses a danger to property is also supported by decisions from other jurisdictions. The United States Court of Appeals for the District of Columbia Circuit, a court cited for its comprehensive treatment of this area of the law; see "Commitment of Persons Acquitted by Reason of Insanity: The Example of the District of Columbia," 74 Colum. L. Rev. 733 (1974); has adhered to this view. In *Overholser* v. *Russell,* 283 F.2d 195 (D.C. Cir. 1960), the court, noting that a person found to have passed bad checks was dangerous, stated: "We think the danger to the public need not be possible physical violence or a crime of violence. It is enough if there is competent evidence that he may commit any criminal act, for any such act will injure others . . . ." Id., 198. In *Overholser* v. *O'Beirne,* 302 F.2d 852 (D.C. Cir. 1961), the court dispelled any notion that larceny, the crime charged in the present case, was not a dangerous offense: "[T]o describe the theft of

watches and jewelry as 'non-dangerous' is to confuse danger with violence. . . . Larceny, assault and murder are all dangerous; they are simply different areas of prohibited conduct." Id., 861.

In other contexts as well, courts have deemed the concept of dangerousness to include nonviolent danger to property. It has been held that deliberate and persistent violation of the Internal Revenue Code and Regulations justifies a denial of post-conviction bail on the ground that the defendant poses a danger to the community. *United States* v. *Karmann,* 471 F. Sup. 1021, 1022 (D. Cal. 1979); *United States* v. *Erickson,* 506 F. Sup. 83 (D. Okl. 1980). A convicted gambler's post-conviction bail was revoked by the court because he was subsequently indicted for a similar offense. *State* v. *Maccioli,* 110 N.J. Super. 352, 265 A.2d 561 (1970). In that case, the court pointed out that under certain circumstances, gambling offenses, along with other white-collar crimes, seriously threaten the safety of the community to the same extent as certain crimes of physical violence. Id., 357.

Lastly, we view confinement of the defendant in this case to be consistent with the purposes of § 53a-47 (a) (4). The trial judge found that the defendant was likely to commit crimes against property in the future.[3] Since the purposes of commitment following an insanity acquittal include the protection of society as well as

---

[3] In his second articulated memorandum of decision, dated September 8, 1983, the court, *Daly, J.,* indicated that his finding was based on the testimony of Hans Langhammer, a psychiatrist at the Norwich State Hospital. At the hearing required by General Statutes § 53a-47, Langhammer testified in pertinent part: "It is more likely than not that he [the defendant] will again indulge at some time in the future at gambling activities. . . .

"More likely means 51 percent and up. . . .

"He would not be a danger to others in a physical sense, but in a property sense. . . .

"Due to mental illness, his release would constitute a danger to himself or others in a property sense."

proper treatment and protection of the defendant; see *Jones* v. *United States,* 463 U.S. 354, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983); we find that confinement was required in this case. The predatory tendencies of a potential embezzler seriously endanger the public at large.

There is error, the judgment is set aside, and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.