UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerald DAVIS, Defendant-Appellant.

No. 84–2272.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1985.
Decided Sept. 5, 1985.

Michele E. Smith, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Daniel G. Martin, Carol A. Brook, Federal Defender Program, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and TIMBERS, Senior Circuit Judge.*

---

* The Honorable William H. Timbers, Senior Circuit Judge for the Second Circuit, is sitting by designation.

CUDAHY, Circuit Judge.

The defendant Gerald Davis was convicted of a seven-year scheme to defraud in which he forged and converted to his own use 227 United States Treasury checks payable to his deceased relatives. Prior to trial the government filed a motion *in limine* to exclude the defendant's proposed insanity defense based on the claim that he was a compulsive gambler. After conducting an extensive evidentiary hearing, the district court excluded the evidence on two independent grounds. The trial court ruled the evidence irrelevant and inadmissible under Rules 403 and 702 of the Federal Rules of Evidence, and also ruled that compulsive gambling could not, as a matter of law, form the basis of an insanity defense to charges of check forgery and conversion. Davis appeals, raising three issues: whether the district court abused its discretion in excluding the evidence under Rules 403 and 702; whether the district court erred in ruling that insanity by reason of compulsive gambling is not a defense to charges of forgery and conversion; and whether exclusion of the evidence violated the Compulsory Process Clause of the Sixth Amendment. We affirm the district court's evidentiary ruling.[1]

## I.

Defendant Davis lived at 1428 North Park Avenue in Chicago with his mother, father and uncle, all of whom were receiving at that address Old-Age and Survivors Insurance Benefits from the Social Security Administration. Davis's mother and father died in November 1975, and his uncle died in February 1976. From December 1975 until at least May 1982 Davis received and used the checks intended for his deceased relatives. Davis accomplished the conversion in part by opening a joint savings account in the names of his mother, his uncle and himself. He forged their signatures on the signature card for the account. Davis then deposited or cashed the checks into his own personal checking account, using the number of the joint savings account as identification. Davis negotiated some of the checks payable to his father at the gas company to pay gas bills, and received any excess in cash. Whenever Davis negotiated a check he forged the endorsement of the relative to whom it was made out. He eventually negotiated 227 checks worth approximately $59,000.

A federal grand jury returned an indictment of Davis in October of 1982; the eleven-count superseding indictment charged Davis with a scheme to defraud and specific counts of forgery, fraudulent conversion of government property and mail fraud in violation of 18 U.S.C. §§ 495, 641 and 1341. In December 1982 defense counsel received the results of a psychiatric examination of the defendant by Dr. Helen Morrison, and pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure filed a Notice of Defense based upon Mental Condition Inconsistent with the Mental Element of the Crime Charged. The defense was that compulsive gambling prevented Davis from conforming his conduct to the requirements of the law. The government filed a motion *in limine* seeking to exclude defendant's insanity defense on the ground that Dr. Morrison's report failed to show that defendant's gambling rendered him incapable of appreciating the wrongfulness of his conduct or of conforming his conduct to the requirements of the law when he forged and converted the checks. The government also disputed whether compulsive gambling could support an insanity defense except to a gambling charge.

The district court set the matter for a pre-trial evidentiary hearing, which was

---

1. We use the terms "compulsive gambling" and "pathological gambling" interchangeably, as most courts appear to do. The American Psychiatric Association lists "Pathological Gambling" as a "Disorder of Impulse Control" in its *Diagnostic and Statistical Manual of Mental Disorders* (3d ed. 1980). This volume is commonly known as the "DSM–III," and will be so referred to here. One essential feature of the disorders of impulse control is the "[f]ailure to resist an impulse, drive or temptation." DSM–III at 291. Pathological gambling is described in section 312.31 of the DSM–III. The second edition of the *Diagnostic and Statistical Manual* ("DSM–II", 1968) did not recognize pathological gambling as a disorder.

held on January 27, February 3 and April 9, 1984. Defendant presented three witnesses at the hearing: Dr. Julian Taber, Dr. Helen Morrison and Dr. Lawrence Freedman. Dr. Taber is the coordinator of the gambling treatment program at the Veterans' Administration hospital in Brecksville, Ohio. Dr. Freedman was one of three psychiatric consultants to the drafters of the American Law Institute's Model Penal Code. Dr. Morrison has testified in over 200 cases, primarily in custody, domestic relations and competence areas. She cannot recall ever having testified in a criminal case that a defendant was sane. She has not written a book or presented a paper or lecture about compulsive gambling, nor has she treated any compulsive gambler other than Davis. She was, however, the only one of the defense witnesses to personally meet or examine the defendant.

After hearing closing arguments the district court issued an oral opinion holding the evidence inadmissible on two independent grounds. The court first stated that compulsive gambling could form the basis of an insanity defense and if the charge against the defendant were a gambling charge it "would unhesitatingly hold that the evidence of compulsion would be a matter for the jury." Dist.Ct.Op. at 3. However, the court noted that the question before it was not whether, by reason of a compulsion, the defendant gambled, but rather "whether the defendant Davis lacked substantial capacity to refrain from forging and cashing a series of some 227 government checks over a period of seven years." Dist.Ct.Op. at 3. The district court found that the testimony of Drs. Taber and Freedman was relevant to the general issue whether there is such a thing as compulsive gambling and whether a compulsive gambler is able to control his gambling, but threw "no significant light" on the question before it. Only the testimony of Dr. Morrison purported to show that forging and cashing the checks were something which, because of his compulsive gambling, Davis had no control over such as to qualify legally as insanity. However, the court found "Dr. Morrison's testimony

to be utterly lacking in credibility, utterly lacking in any substantial basis in fact, and unworthy of submission to a jury." Dist. Ct.Op. at 4. The court explained its finding as follows:

Dr. Morrison impressed me as capable of testifying to anything, absolutely anything.

I won't attempt an item-by-item analysis of her testimony because to do so would be misleading as far as the actual basis for my decision is concerned.

The basis for my decision is the entirety of the testimony of Dr. Morrison. One simply has to read it in order to know what I'm talking about. Preferably one should have been here in the courtroom to hear it, but lacking that, the next best thing is to read it word for word.

Dist.Ct.Op. at 5.

The court then excluded the evidence under Rules 403 and 702 of the Federal Rules of Evidence. The court held that Dr. Morrison failed to show that she was qualified as an expert to testify on the specific question presented by this particular case, and that her very testimony confirmed this lack of expertness. Therefore her testimony was not admissible under Rule 702. The court also held that Dr. Morrison's testimony would mislead the jury and confuse the issues, while at the same time providing no probative evidence upon which a reasonable jury could act, and excluded the evidence under Rule 403. The court also ruled, as a second and independent ground for excluding the evidence, that the need or desire for money motivated by compulsiveness or addiction or other allegedly uncontrollable behavior does not constitute a defense to a criminal charge of stealing that money. Thus, even if the testimony had tended to establish that a nexus "exist[ed] as a matter of psychiatry" between Davis's compulsive gambling and his failure to refrain from forging and converting the checks, it would be inadmissible. Dist. Ct.Op. at 9–10.

The defendant was subsequently tried in a bench trial on stipulated facts, and convicted on all counts. Davis was then sentenced to two years concurrently on six counts, followed by five years probation on the remaining counts. As a condition of probation he was ordered to use his best efforts to make $60,000 in restitution. He now appeals the district court ruling excluding the evidence for his insanity defense.

## II.

This circuit has adopted the American Law Institute's definition of the insanity defense, which, until recently,[2] has governed criminal trials in this circuit. *United States v. Shapiro,* 383 F.2d 680 (7th Cir. 1967) (en banc). *See* AMERICAN LAW INSTITUTE, MODEL PENAL CODE § 4.01 (Proposed Official Draft 1962). This definition contains a "volitional prong," under which a defendant is not responsible for his criminal conduct "if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity ... to conform his conduct to the requirements of law." MODEL PENAL CODE, § 4.01(1); *see Shapiro,* 383 F.2d at 684. Davis's claim is that because of his compulsive gambling (or the purportedly underlying "obsessive-compulsive personality" he sometimes speaks of) he was unable to refrain from forging and cashing the checks.

 A defendant is presumed sane; in order to rebut this presumption and reach the jury on an insanity defense, the defendant must present "some evidence" of insanity. *United States v. Sennett,* 505 F.2d 774 (7th Cir.1974). Whether the defendant

has presented "some evidence" is a matter for the court not the jury. *Sennett,* 505 F.2d at 778. The government argues that the district court ruled that Davis had not even met this minimal threshold burden, and ruled so properly, and that therefore we need not even reach the other evidentiary issues. However, we do not believe the district court made such a ruling. The government's psychiatric examination report indicated that Davis was a compulsive gambler but that he could control his check forging and converting activities, and Dr. Morrison testified (at times) that he suffered from a compulsion to gamble. The district judge indicated that if a gambling charge was before him he would admit the evidence. So we will assume, without deciding, that the defendant had presented what would be "some evidence that he had a mental disease or defect at the time of the commission of the crime charged." *Sennett,* 505 F.2d at 778 (quoting *Shapiro,* 383 F.2d at 686).

 The trial court has broad discretion to assess the admissibility of proffered evidence, and we may reverse its rulings only when we are persuaded that the court abused its discretion. *United States v. Latham,* 754 F.2d 747, 751 (7th Cir.1985); *United States v. Brown,* 688 F.2d 1112, 1115 (7th Cir.1982); *United States v. West,* 670 F.2d 675, 682 (7th Cir.), *cert. denied,* 457 U.S. 1124 & 1139, 102 S.Ct. 2944 & 2972, 73 L.Ed.2d 1340 & 1359 (1982).

 The district court excluded Dr. Morrison's testimony on two grounds, one of which was Rule 702 of the Federal Rules of Evidence.[3] Expert testimony is not ad-

2. The federal insanity defense was recently revised by the "Insanity Defense Reform Act of 1984" (the "Act"), which is chapter IV of title II of the "Continuing Appropriations, 1985—Comprehensive Crime Control Act of 1984," Pub.L. No. 98–473, 98 Stat. 1837, 2057–68 (1984). Section 402 of the Act, 18 U.S.C. § 20, amends the defense by deleting the "volitional prong" of the defense at issue here, and also provides that it is an affirmative defense which the defendant bears the burden of proving by clear and convincing evidence. Section 406 of the Act amended Rule 704 of the Federal Rules of Evidence by adding subdivision (b) which prohibits

expert testimony by opinion or inference on whether a defendant did or did not have a mental state or condition constituting an element of the crime or a defense to it. *See generally* S.REP. No. 225, 98th Cong., 2d Sess. 222–54, *reprinted in* 1984 U.S.CODE CONG. & AD.NEWS 3182, 3404–36.

3. Rule 702 provides:
 Testimony by Experts.
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact

missible under Rule 702 if it will not assist the jury in understanding the evidence or determining a fact in issue or it is purely speculative. *United States v. West,* 670 F.2d at 682–83. Under Rule 702 a trial court has broad discretion to admit or exclude expert testimony, and its ruling will be reversed only for abuse of discretion. *United States v. Watson,* 587 F.2d 365, 369 (7th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979); *United States v. Chaney,* 577 F.2d 433, 435 (7th Cir.1978) (per curiam); *United States v. Cyphers,* 553 F.2d 1064, 1072 (7th Cir.), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977). *See Kelsay v. Consolidated Rail Corp.,* 749 F.2d 437, 448 (7th Cir.1984). This applies as well to rulings on expert testimony concerning a defendant's sanity. *United States v. Lopez,* 543 F.2d 1156, 1158 (5th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566 (1977).

■ We have reviewed the testimony of Dr. Morrison, and are in complete accord with the district court's conclusion. Her testimony shows her to be unqualified as an expert on the issue that would be before the jury. Her testimony seems illogical, inconsistent and, in considerable part, incomprehensible and lacks any basis in fact. Quite clearly, it could not assist a jury to determine the central fact that would be in issue in Davis's insanity defense. Essentially this is the case because the witness does not explain why a compulsion (or uncontrollable impulse) to gamble translates—seemingly automatically—into an uncontrollable impulse to obtain money illegally with which to gamble. The district court did not abuse its discretion in excluding Dr. Morrison's testimony under Rule 702.

■ The second ground on which the district court relied was Rule 403.[4] The trial judge, who sees and hears the evidence firsthand, can best perform the balancing required by Rule 403. *United States v. Brown,* 688 F.2d at 1117 (prejudice against probative value). We "are 'obligated to afford substantial deference to the evidentiary ruling of the trial court.'" *United States v. Watson,* 623 F.2d 1198, 1203 (7th Cir.1980) (quoting *United States v. Dolliole,* 597 F.2d 102, 107 (7th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979)); *see United States v. Medina,* 755 F.2d 1269, 1274 (7th Cir.1985) ("great deference"). We will reverse only on a clear showing of abuse of discretion. *United States v. Hattaway,* 740 F.2d 1419, 1424–25 (7th Cir.), *cert. denied,* —— U.S. —— & ——, 105 S.Ct. 448 & 599, 83 L.Ed.2d 373 & 708 (1984); *United States v. Covelli,* 738 F.2d 847, 854 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984). This standard of review also applies when the district court balances the probative value of the proffered evidence against the danger of misleading the jury or confusing the issues. *United States v. Oxman,* 740 F.2d 1298, 1303 (3d Cir.1984), *vacated and remanded on other grounds,* —— U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985).

■ Our review of Dr. Morrison's testimony convinces us that the district court properly found any probative value it had to be substantially outweighed by the danger of misleading the jury or confusing the issues. We agree with the district court that it is a rare case in which a witness's testimony is not fit to be heard by a jury, and that such a determination is not to be lightly made. But we do not think the district court abused its discretion by so ruling in the case of Dr. Morrison's testimony.

---

in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

**4.** Rule 403 provides:
 Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Having determined that Dr. Morrison's testimony was properly excluded, we turn to the district court's exclusion of the testimony of Drs. Taber and Freedman. The court found their testimony irrelevant because it did not discuss the relation between defendant's compulsive gambling and any inability he may have had to refrain from forging and converting the checks. A district court's rulings on the relevance of proffered evidence are subject to review for abuse of discretion, *United States v. Latham*, 754 F.2d at 751. The same is true for rulings about the foundations for the admissibility of expert testimony. *See United States v. Chaney*, 577 F.2d at 434–35.

Neither Dr. Taber nor Dr. Freedman had examined Davis. Dr. Taber essentially testified to his experience directing a clinic for and treating compulsive gamblers and how he diagnosed them. His testimony might be relevant to whether psychiatrists believe there is such a mental disease or defect. But without testimony as to the results of an actual examination of Davis, Dr. Taber's testimony is irrelevant to whether *Davis* had the condition or whether *Davis* could refrain from forgery and conversion. The testimony lacks a foundation upon which Dr. Taber could give a hypothetical answer based upon facts in the record. Much the same can be said about Dr. Freedman's testimony. His testimony was essentially an oral legislative history of the drafting of the Model Penal Code insanity defense, by which Davis attempted to show that compulsive gambling could fall within the legal definition of "mental disease or mental defect" provided in the defense. The psychiatrist explicitly refused to answer a hypothetical question concerning a compulsive gambler's ability to conform his conduct in stealing money to the requirements of the law because he had not examined the individual. Freedman Tr. 51. The district court did not abuse its discretion in excluding the testimony of Drs. Taber and Freedman as irrelevant to the issue whether there was any relationship between Davis's compulsive gambling and his ability to conform his conduct to the requirements of the law in dealing with other persons' Social Security checks.

### III.

Davis next argues that the district court erred in holding that a defendant may not rely on a theory of insanity by reason of compulsive gambling. But this misrepresents what the district court held. The district court stated that if the offense charged was a gambling offense, it would let the evidence go to the jury. The court ruled only that compulsive gambling could not form the basis of an insanity defense to a charge of stealing money.

A number of district courts have recently held that compulsive (or "pathological") gambling cannot form the basis of a volitional insanity defense to non-gambling charges. *United States v. Torniero*, 570 F.Supp. 721, 732–34 (D.Conn.1983) (interstate transportation of stolen goods), *aff'd on narrower grounds*, 735 F.2d 725 (2d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985); *United States v. Lewellyn*, Crim. No. 8243 (S.D. Iowa, August 16, 1982) (embezzlement), *aff'd on narrower grounds*, 723 F.2d 615 (8th Cir.1983); *United States v. Carmel*, No. 84 CR 508 (N.D.Ill. January 3, 1985) (mail and wire fraud). *See United States v. Gould*, 741 F.2d 45 (4th Cir.1984) (affirming on narrower grounds; trial court held pathological gambling, as matter of law, could not form basis of ALI insanity defense) (unlawful entry of bank with intent to commit robbery or larceny).[5] The defendant correctly points out that in none of these cases did the appellate court hold that

---

5. *See also State v. Lafferty*, 192 Conn. 571, 472 A.2d 1275 (1984) (trial court accepted compulsive or pathological gambling as volitional insanity defense to charge of embezzlement, defendant acquitted; appellate court did not reach issue). Recent Connecticut legislation provides that pathological or compulsive gambling is not a defense under either the cognitive or volitional prong of Connecticut's ALI-type insanity defense. Conn.Public Acts 1983, No. 83–486, § 1(c); *see State v. Lafferty*, 192 Conn. at 573 n. 1, 472 A.2d at 1276 n. 1.

compulsive gambling could never form an insanity defense to non-gambling charges. But the courts did affirm the convictions at issue, and in so doing placed important restrictions on the use of compulsive gambling as an insanity defense.

In *United States v. Lewellyn*, 723 F.2d 615 (8th Cir.1983), the Eighth Circuit affirmed a conviction for embezzlement. The court assumed for purposes of the appeal that the defendant was a compulsive gambler, that the use to which he put the embezzled money was gambling and that some compulsive gamblers are unable to resist impulses to gamble. *Lewellyn*, 723 F.2d at 617. However, the court held that the defendant had not made the minimum showing of insanity necessary to raise the insanity defense. The court applied the test of *Frye v. United States*, 293 Fed. 1013 (D.C.Cir.1923), to the DSM–III and the expert testimony offered to establish the requisite relationship between the gambling disorder and the charged "collateral" offenses. 723 F.2d at 619. The Eighth Circuit concluded that the evidence did not establish that the thesis that some compulsive gamblers cannot conform their conduct to laws prohibiting embezzlement had gained "general acceptance in the fields of psychiatry and psychology." 723 F.2d at 618–20. The court specifically declined to consider whether compulsive gambling may never be grounds for an insanity defense. 723 F.2d at 617.

The Second Circuit applied a substantially similar rationale in affirming a conviction for interstate transportation of stolen goods. *United States v. Torniero*, 735 F.2d 725 (2d Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985). The court assumed, without deciding and while expressing doubts, that compulsive gambling was a mental disease or defect as those terms are used in the ALI-defined defense. 735 F.2d at 731–32. However, the court said that what must be shown was a sufficiently convincing and well established connection between compulsive gambling and the inability to resist the impulse to steal. This connection must be so well validated that there is "substantial acceptance" among "respected authorities" in the mental health profession that the disorder could impair the defendant's ability to desist from the offense charged. The court held that since these conditions were not met, the defense was irrelevant. 735 F.2d at 731–32.

The Fourth Circuit has followed much the same reasoning. *United States v. Gould*, 741 F.2d 45 (4th Cir.1984). The court there held that the general hypothesis that compulsive gambling may deprive some persons of the capacity to conform their conduct to the requirements of the law prohibiting entry of banks with intent to rob or steal was not shown to have "substantial acceptance" in the relevant scientific discipline. Neither the DSM–III nor expert testimony supported this showing. Hence, a proffered defense based on this hypothesis failed the test of "foundational relevance." 741 F.2d at 49–52. Only if the defense were so shown to be foundationally relevant would the court have had to reach the issue whether the defendant before it had presented the "slight evidence" of insanity necessary to rebut the presumption of sanity, place the burden of proof of sanity on the government and reach a jury with the issue. Further, the Eighth Circuit did not decide whether compulsive gambling is a mental disease or defect under the ALI defense, whether it might constitute a successful insanity defense to some conduct or whether the defendant was, indeed, a compulsive gambler at the relevant times. 741 F.2d at 50.

Because we have determined that the evidence here was properly excluded on simple evidentiary grounds, we need not confront these difficult questions. The question seems essentially the same, however, whether we apply the *Frye* expert witness test as in the Eighth Circuit, the "substantial acceptance" amoung "respected authorities" test as in the Second Circuit or the "foundational relevance" test as in the Fourth Circuit. Under these tests neither the testimony of Drs. Taber and Freedman nor the DSM–III establishes the

necessary support amoung the relevant professional and medical community for the proposition that compulsive gambling involves in some persons the inability to conform their conduct to the laws prohibiting check forgery and conversion.

As a general proposition and without reference to any particular testimony offered here, it does not seem to us enough to show that gambling is compulsive (the result of an irresistible impulse), money is necessary for gambling and therefore the stealing of money is equally "compulsive." The stealing may follow as a matter of logic or means-end reasoning but this in itself should not necessarily result in a psychiatric characterization of the act of stealing as "compulsive." [6]

### IV.

Defendant's final argument is that the district court decision violated the Compulsory Process Clause of the Sixth Amendment to the Constitution.[7] Courts will, of course, invalidate applications of evidentiary rules which prevent a defendant from presenting his view of the facts, and thereby violate the Sixth Amendment. *See, e.g., Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *United States v. Pizarro,* 717 F.2d 336, 351 (7th Cir.1983); *see also Boykins v. Wainwright,* 737 F.2d 1539, 1544 (11th Cir.1984) (evidence of previous history of mental illness). Davis concedes that the issue here is not the validity of any rule of evidence, Davis Br. 59, but argues that the trial court nevertheless violated his Sixth Amendment rights. There are, however, two flaws in Davis's argument.

■ First, the defendant's argument is predicated on the claim that the district court's ruling prevented him from presenting any evidence in his own behalf. But this is not a correct description of the district court's ruling. The district court simply ruled that the testimony of Drs. Taber and Freedman was irrelevant and that the testimony of Dr. Morrison was inadmissible under Rules 403 and 702. The district court did not exclude all Davis's evidence, and in particular asked Davis's counsel if there was any other evidence which could be presented to show a sufficient relation between the compulsive gambling and the forging and converting of the checks. The court indicated that Davis's own testimony might supply this link, but defense counsel elected to rely solely on the testimony of the three psychiatric witnesses. Tr. (April

---

**6.** Thus we agree with the following statements in the district court opinion:

> Dr. Freedman handled that question [whether Davis lacked substantial capacity to refrain from the activity of forging and converting the checks] as a simple matter of logic: If one is compelled to gamble, obviously one needs the wherewithal to do so, and therefore one is compelled to acquire that wherewithal by whatever means are at hand. This is simply too facile an explanation to be credited. That is not psychiatric testimony, and I seriously question whether it was intended to be. It was simply a syllogism, the validity of which does not appeal to me. Dist.Ct.Op. at 3. We are not, however, agreeing with the court's statement in its second reason for supporting its ruling that even if the nexus "exist[s] as a matter of psychiatry" [and so presumably the defendant lacks the substantial capacity in question], the compulsive gambling defense is irrelevant as a matter of law. Dist. Ct.Op. at 9–10.

The best general discussion of the use of exculpatory concepts (such as "compulsion") in the law, and the need for precision in that use, remains J.L. Austin's *A Plea for Excuses,* 57 Proc. Aristotelian Soc'y 1 (1956–57), *reprinted in* The Philosophy of Action 19 (A.R. White, ed. 1968). *See also* H.L.A. Hart, Punishment and Responsibility (1968). One of the best general discussions of voluntary action is still Aristotle's in the *Nichomachean Ethics.*

**7.** In relevant part, the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. The Sixth Amendment right of an accused to have compulsory process for obtaining witnesses in his favor is incorporated in the Due Process Clause of the Fourteenth Amendment, and so also applies in state criminal trials. *Washington v. Texas,* 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967).

9, 1984) at 64–65.[8] The trial court did not prevent Davis from presenting a defense; Davis could not present a defense because he had no relevant non-confusing evidence which he chose to present.

Second, the exclusion of evidence cannot violate the Sixth Amendment unless that evidence would be relevant and material, as well as favorable to the defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982); *United States v. Raineri*, 670 F.2d 702, 713 (7th Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982); *United States v. De Stefano*, 476 F.2d 324, 330 (7th Cir.1973). The Sixth Amendment does not make otherwise irrelevant evidence admissible. *See United States v. Fosher*, 590 F.2d 381, 382–83 & 384 n. 2 (1st Cir.1979). Since the testimony here was inadmissible because irrelevant, no Sixth Amendment violation occurred. *United States v. Verkuilen*, 690 F.2d 648, 659 (7th Cir.1982); *United States v. Peltier*, 585 F.2d 314, 332–33 (8th Cir. 1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); *United States v. De Stefano*, 476 F.2d at 330.

We have concluded that the district court properly excluded the testimony of Drs. Taber, Freedman and Morrison on the facts of this case. Therefore the defendant is not entitled to a new trial, and the judgment of conviction is AFFIRMED.

---

**8.** The district court stated that it was not holding this decision not to testify against the defendant, Dist.Ct.Op. at 8, and quite properly did not. Defendant argues that the court did punish him for not testifying because he chose to testify through Dr. Morrison, and that by excluding her testimony the district court was violating his right to testify on his own behalf. This argument is frivolous. Similarly without merit is Davis's claim that the district court "prematurely forced" him to decide whether or not to testify.