[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR CONTINUED COMMITMENT
In 1985, the acquittee, Thomas Pallotolo, was found not guilty by reason of insanity on charges of risk of injury to a minor and public indecency. As a result of such judgment, he was committed to the jurisdiction of the Psychiatric Security Review Board (hereinafter PSRB) for a period not to exceed 10 1/2 years. Within the time limited by statute, the State's Attorney for the Judicial District of New London moved for continued commitment of the acquittee pursuant to General Statutes § 17a-593(c). For reasons hereinafter stated the motion is granted, and commitment to the board is extended for an additional three-year period.
From 1985 through January 1991, as a result of periodic hearings, the PSRB found that Mr. Pallotolo was a person who should be confined and ordered his confinement first at Whiting Forensic Institute then at Norwich Hospital. This was based on the finding that he was mentally ill to the extent that his discharge or conditional release would constitute a danger to himself and others.
At times, temporary leave privileges were granted to Mr. Pallotolo.
On February 6, 1991, the PSRB found that Mr. Pallotolo was a person who should be conditionally released in that although he was mentally ill he could be adequately treated and supervised in the community without posing a danger to the community. In May of 1992, the conditional release was terminated because of Pallotolo's inappropriate and harassing telephone calls to a former girlfriend due to his deteriorating mental condition. It would appear that he had hallucinations commanding him to contact her and have sex with her. He thought he was a god and she was his wife. There may have been threats involved in the telephone calls.
From May through December 1992, Mr. Pallotolo was again confined at Norwich by order of the PSRB. On December 16, 1992, Mr. Pallotolo escaped from custody and went to Mexico. He did this because he had a vision that if he did not go to California, there would be a massive earthquake. There was no CT Page 239 indication that he engaged in any criminal activity while away.
When he ran out of money, Mr. Pallotolo turned himself in and he has been confined at Whiting since his return to custody.
On its motion for continued commitment of Mr. Pallotolo beyond his definite period of commitment, § 17a-593(c) imposes upon the state the burden of showing by clear and convincing evidence that the acquittee is currently mentally ill and dangerous to himself or others. State v. Metz, 230 Conn. 400,425 (1994).
As required by statute, the PSRB filed a report with the court setting forth its findings and conclusions as to whether Mr. Pallotolo should be discharged. In its report, the PSRB found that the acquittee remained a person who should be confined; that he suffered from a psychiatric disorder to the extent that his discharge or conditional release would constitute a danger to himself or others and that he was currently so violent that he required confinement in a maximum security setting. The Board recommends and extended commitment of three years.
At the hearing before the court on this petition, Mark Schroeder, M.D. testified for the acquittee. Mr. Pallotolo testified on his own behalf and Keith Scott, M.D., the treating physician was called by the state.
Dr. Schroeder, whose examination of the acquittee was basically limited to the study of medical reports, a letter from the acquittee's attorney and a one and one half hour interview with Mr. Pallotolo, reached conclusions somewhat different from those of the PSRB. Dr. Schroeder agreed with the PSRB that the acquittee suffered from a schizoaffective disorder and alcohol, cannabis and hallucinogen abuse as well as sexually acting out with young children in the past.
Dr. Schroeder agreed that the acquittee should not be released from custody but that commitment at Whiting Forensic Institute was unnecessary. He recommended a cautious release to the community.
Dr. Schroeder's final conclusion was to a large part based upon his finding that Mr. Pallotolo was not dangerous to others CT Page 240 and that his conduct had never constituted a danger to himself. The doctor also remarked that Mr. Pallotolo's crimes involving exposing himself to and touching young children were not crimes of violence.
Danger should not be confused with violence. The concept of dangerous activity could be deemed to include nonviolent behavior. State v. Lafferty, 192 Conn. 571, 575 (1984).
Conduct in violation of the risk of injury statute §53-21 could well be nonviolent but still constitute a danger to the child involved. State v. Payne, 40 Conn. App. 1, 4-10.
Although there was no evidence that Mr. Pallotolo ever attempted to directly harm himself, criminal conduct of the type which he has committed in the past could cause a reaction in others which would result in injury to himself. A reversion to substance abuse would also be dangerous to Mr. Pallotolo.
The evidence indicates that Mr. Pallotolo suffers from a mental illness, a schizoaffective disorder and that his past criminal conduct arose out of this condition. Dr. Schroeder has opined that a primary pedophilia could have also been a factor in his acts with young children. His most recent problems appear to have involved hallucinations including auditory hallucinations.
The course of treatment designed to keep Mr. Pallotolo's mental illness under control involves medication and therapy. Two types of therapy have been prescribed for Mr. Pallotolo. One type involves group discussions of general topics. Mr. Pallotolo does well in this format and fully participates in the discussions. Mr. Pallotolo, however, refuses to participate in therapy which involves his mental illness, sexual misconduct and past history of substance abuse. He has advanced reasons for his refusal to discuss these subject. Whatever the validity of these reasons may be, however, by resisting the therapy, Mr. Pallotolo is impeding the analysis and treatment of his mental illness.
The principal medication prescribed for Mr. Pallotolo's mental illness is clozaphine. In 1994 when he experienced delusional thoughts and auditory hallucinations, at Mr. Pallotolo's request, the dosage was increased from 150 mg once per day by an additional 300 mg at another time per day. In CT Page 241 1995 Mr. Pallotolo began to be concerned about a reduced amount of ejaculation. It was determined that he was suffering from retrograde ejaculation probably related to the medication. Because of this he insisted on an decrease in medication to 150 mg twice a day.
Dr. Scott, Mr. Pallotolo's treating psychiatrist expressed an opinion that Mr. Pallotolo shows little insight into his need to take medication and that if he was not receiving the proper medication he would become psychotic. The doctor further stated that in his opinion Mr. Pallotolo would not take medication if left to his own choice.
Mr. Pallotolo's refusal to participate in the therapy designed to address his specific problems, and his reluctance to take medication which he admits will help his psychotic condition in the recommended dosage, confirms Dr. Scott's opinion that if Mr. Pallotolo was not under the PSRB's jurisdiction he would not use the medication and would quickly relapse into psychosis and would probably return to an abuse of alcohol and drugs. This would lead to a return to the type of dangerous conduct which Mr. Pallotolo has engaged in in the past.
Accordingly, it is found by clear and convincing evidence that Mr. Pallotolo is currently mentally ill and a danger to himself and others and that his commitment to the Board be extended for an additional three year period.
Purtill, J.